PEOPLE v HARRISON

1. CRIMINAL LAW—INDORSEMENT OF WITNESSES—LATE INDORSEMENT.

Defendants are extended the same leeway as prosecutors in having witnesses indorsed after the filing of the information, and where the prosecutor was on notice of, and duty bound to obey, a court order to the effect that there might be res gestae witnesses unknown to him, late indorsement requested by defendant should be granted (MCLA 767.40).

2. CRIMINAL LAW—INDORSEMENT OF WITNESSES—STATUTES.

The purpose of the statute requiring the prosecution to indorse on the information all witnesses known at the time of its filing is to protect defendants from false accusations by requiring disclosure of the whole of the res gestae, by preventing the suppression of testimony favorable to the accused, and by extending to them the benefits of cross-examination (MCLA 767.40).

3. CRIMINAL LAW—INDORSEMENT OF WITNESSES—EXCEPTIONS—CUMU-LATIVENESS—APPEAL AND ERROR.

Prosecutorial claims of cumulativeness as an excuse for failure to indorse res gestae witnesses upon timely objection of defense counsel will be carefully scrutinized by the Court of Appeals when a lower court's ruling results in excusing the people from calling one whom they have a duty to produce as a witness (MCLA 767.40).

4. CRIMINAL LAW—INDORSEMENT OF WITNESSES—EXCEPTIONS—CUMU-LATIVENESS.

The prosecution cannot claim cumulativeness as an excuse for failure to indorse res gestae witnesses upon timely motion of defense counsel where the testimony of the witnesses not indorsed contradicts other testimony in the record and was essential to protect the defendant from a false accusation, since testimony which contradicts other testimony in the record cannot be said to be "merely cumulative".

REFERENCE FOR POINTS IN HEADNOTES
[1–12] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

5. CRIMINAL LAW—INDORSEMENT OF WITNESSES.

No exact precise definition of "res gestae witness" can be formulated; the term embraces eyewitnesses to the corpus delicti of a crime, but where a person is present at the scene of an alleged crime, at the time of the alleged crime, has occasion to observe his surroundings, and sees no crime, he too must be considered a res gestae witness, whom the people are obliged by law to call as a trial witness (MCLA 767.40).

6. CRIMINAL LAW—INDORSEMENT OF WITNESSES.

Every reasonable doubt as to whether a witness is a res gestae witness must be resolved in favor of indorsing and calling the witness when a defendant insists on his rights.

7. CRIMINAL LAW—INDORSEMENT OF WITNESSES—ACCOMPLICES.

The trial court erred in failing to require the indorsement of a res gestae witness whom the prosecutor claimed was an accomplice of the defendant where the status of the witness as defendant's accomplice had not been established and there is no showing that the witness acted in concert with the defendant.

8. CRIMINAL LAW—INDORSEMENT OF WITNESSES—EXCLUSION OF WITNESSES.

The prosecutor is not at liberty, in the trial of a criminal case, to indorse only those witnesses who are most favorable to the prosecution when there are others who are in a position to know, and do in fact know, as much about the transaction.

9. CRIMINAL LAW—INDORSEMENT OF WITNESSES—CREDIBILITY.

Disbelief by the prosecutor of the testimony of a res gestae witness is insufficient reason to excuse compliance with the statute requiring indorsement of res gestae witnesses, because the credibility of any witness is a matter for the trier of fact, and if the prosecution disbelieves the witness he has the right granted by statute to impeach him, which is the proper procedure when the prosecutor suspects in good faith that an individual res gestae witness is not telling the truth (MCLA 767.40).

10. CRIMINAL LAW—INDORSEMENT OF WITNESSES—RELATIONSHIP WITH DEFENDANT—FRIENDS.

The fact that a res gestae witness is a close friend of the defendant is no reason to excuse compliance with the statute requiring indorsement and any purported recognized exception

in cases of close blood relationship, whatever the validity of the rule, should not be extended (MCLA 767.40).

11. CRIMINAL LAW—PRODUCTION OF WITNESSES—DUE DILIGENCE.

The prosecutor must make a showing, on the record, of due diligence in his efforts to locate res gestae witnesses, and where the witness is outside the state, statutory procedures must be invoked to procure his attendance; and where there was failure to conform with such requirements, it was reversible error.

12. CRIMINAL LAW—INDORSEMENT OF WITNESSES—FAILURE TO INDORSE —APPEAL AND ERROR.

The trial court's error in failing to require the prosecutor to indorse certain res gestae witnesses is not obviated by the fact that the defendant himself called the witnesses at trial, because one of the purposes of the statute is to give the defendant the benefit of cross-examination, and because the credibility of a witness may be enhanced or detracted from depending on which party calls him as a witness.

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted Division 2 January 3, 1973, at Lansing. (Docket No. 11447.) Decided February 20, 1973.

Thaddeus R. Harrison was convicted of felonious assault. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* Assistant Prosecuting Attorney, for the people.

*Leitson, Dean, Dean, Segar & Hart, P. C.,* for defendant.

Before: QUINN, P. J., and R. B. BURNS and C. J. BYRNS,* JJ.

C. J. BYRNS, J. Tried on an information charging

* Circuit judge, sitting on the Court of Appeals by assignment.

him with assault with intent to do great bodily harm less than the crime of murder, MCLA 750.84; MSA 28.279, defendant was convicted by a jury of felonious assault, MCLA 750.82; MSA 28.277, sentenced to serve 40 days in jail, assessed a fine and court costs, and placed on 5 years probation. Because of the importance of the legal issues raised on this appeal, the pertinent facts will be set forth in some detail.

I

On March 19, 1970, a demonstration on the Ann Arbor campus of the University of Michigan attracted a large crowd, estimated to contain as many as 1500 persons. A confrontation between police officers and demonstrators occurred, during the course of which Officer Paul Bunten of the Ann Arbor Police Department was struck by a rock, allegedly thrown at him by the defendant.

At trial, Officer Bunten testified that as he attempted to maintain order at the scene of the disturbance he observed the defendant throw a rock, which struck Bunten on the thigh, causing injury. Five other policemen testified for the people, all but one of whom confined their testimony to describing the circumstances surrounding defendant's apprehension and arrest; the fifth corroborated Officer Bunten's version of the incident, and identified defendant as the person who threw the rock. No other witnesses were produced or called by the prosecution.

Defendant, who testified in his own behalf, denied that he ever hurled any missile of any kind at anyone. One other defense witness corroborated defendant's testimony.

On this appeal, defendant presents two assign-

ments of error for our consideration. Defendant first challenges the failure of the trial judge to require the prosecutor to endorse the names of five persons on the information as res gestae witnesses, and also alleges that he was denied a fair trial by virtue of certain improper remarks made by the prosecutor in closing argument.

## II

At defendant's preliminary examination on April 8, 1970, defense counsel questioned a police witness regarding an article entitled "A Day in the Life of T. R. Harrison", which appeared in the March 21, 1970 issue of *The Michigan Daily,* accompanied by several pictures of defendant's arrest. The newspaper by-line identified the author and photographer, respectively, as Eric Siegel and Sara Krulwich. The witness denied having any knowledge of the story or the reporters involved.

On November 13, 1970, defense counsel filed a motion to require the prosecutor to endorse on the information the names of certain witnesses, unidentified in the motion, who purportedly testified before a civic committee which was investigating the campus disturbance. It was also noted in the motion that video tapes of the disturbance were taken by photographers for the local television stations, and that the prosecutor had failed to endorse the photographers as res gestae witnesses or to subpoena their video tapes. The trial court ordered the prosecutor "to endorse on the information all witnesses known to the prosecutor", without specifying any names, no later than December 31, 1970.

On January 18, 1971, defendant filed a second motion, maintaining generally that the prosecutor had failed to endorse res gestae witnesses, and

requesting the court to order the endorsement on the information of "all res gestae witnesses known to the Prosecutor, including witnesses Sara Krulwich and Eric Siegel".

At the hearing on this second motion, on January 22, 1971, defense counsel presented a third motion, requesting the endorsement of three additional res gestae witnesses, Darryl Conliffe, Robert Evans, and Maurice Tate, and listing their respective addresses. Defense counsel informed the court that he had personally served subpoenas on all five of the named witnesses, on January 20, to assure their presence at trial. Based on certain arguments made by the prosecutor, the trial judge adjourned the hearing until the morning of trial, January 25, 1971, to permit the prosecutor to contact the alleged res gestae witnesses named in defendant's various motions.

When the hearing commenced on January 25, the prosecutor argued that none of the five persons was a res gestae witness, and that he therefore had no duty to endorse their names on the information or to call them as witnesses at trial. The prosecutor contended, respectively, as follows:

(1) Eric Siegel: not an eyewitness

(2) Sara Krulwich: not an eyewitness

(3) Robert Evans: The prosecutor claimed to have a photograph taken at the demonstration showing Evans with a rock in his hand. It was argued that Evans was defendant's accomplice by virtue of his participation in the incident, and accordingly that the prosecutor was thereby excused from his duty to endorse Evans on the information.

(4) Darryl Conliffe: The prosecutor conceded that Conliffe claimed to have been close to the defendant at all times before and during the demonstra-

tion until defendant's arrest, but averred that Conliffe was not telling the truth, and by virtue of that "fact", and the fact that Conliffe is a close friend of the defendant, that there was no duty on the part of the prosecution to endorse Conliffe as a res gestae witness.

(5) Maurice Tate: The prosecutor stated that the police had been unable to contact Tate as of the hearing date. At oral argument before this Court it was established that Tate was seated in the courtroom throughout the four-day trial, but the prosecutor made no attempt to interview Tate at that time.

## III

Of these five persons, two, Tate and Evans, were present at trial but did not testify. Siegel and Krulwich were called by the defense, and both testified that they first noticed defendant as he was being placed under arrest.[1] In admitting the photographs taken by Krulwich into evidence, over the prosecutor's objection, the trial judge ruled that defendant's arrest was related so closely to the alleged offense as to constitute part of the res gestae.

Darryl Conliffe, called as a witness by the defense, testified that he ate lunch with the defendant, and together the two went to the scene of the demonstration. Although concededly he did not have his eyes on the defendant every moment, Conliffe did not see the defendant pick up or throw a rock at any time.

---

[1] Apparently, their attention was attracted because defendant's arrest was accompanied by an altercation, during which defendant was subdued quite forcefully. One policeman received a departmental reprimand for his conduct in this regard.

## IV

MCLA 767.40; MSA 28.980 provides in relevant part:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate, by the prosecuting attorney of the county as informant; he shall indorse thereon the names of the witnesses known to him at the time of filing the same. * * * Names of additional witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine."

The term "all witnesses" encompasses only res gestae witnesses. *People v Keywell,* 256 Mich 139 (1931); *People v Banks,* 27 Mich App 331 (1970); *People v Kern,* 6 Mich App 406 (1967). Moreover, this Court has held that the prosecutor's duty under this statute is limited to witnesses whose identity is known. *People v Loggins,* 17 Mich App 388 (1969). In the case at bar, the record affirmatively discloses that the prosecutor was fully apprised concerning these witnesses by defense counsel's repeated and timely motions. At or before the time of trial, the prosecutor knew these witnesses existed. *Cf. People v Kaczor,* 14 Mich App 724 (1968).

Generally, permitting the late endorsement of witnesses is within the discretion of the trial court. *People v Blue,* 255 Mich 675 (1931); *People v Hodges,* 34 Mich App 90 (1971). However, the discretion thus entrusted to the trial judge is not unfettered; it must be exercised with due regard for the defendant's right to a fair trial. *People v Lakin,* 30 Mich App 441 (1971). Consequently, this Court will review a trial court's action to determine whether such discretion has been abused.

*People v Tann,* 326 Mich 361 (1949); *People v Costanza,* 306 Mich 415 (1943); *People v Tamosaitis,* 244 Mich 258 (1928).

As to the timeliness of a motion to endorse specified witnesses after the filing of the information, trial courts have been frequently upheld when they permitted prosecutors to endorse witnesses on the day of trial. *People v Lakin, supra; People v Snow,* 26 Mich App 510 (1970); *People v Spears,* 241 Mich 67 (1927); or even after trial has begun, *People v Moore,* 306 Mich 29 (1943), *cert den,* 321 US 787; 64 S Ct 783; 88 L Ed 1078 (1944); *People v Powers,* 203 Mich 40 (1918); *People v Baker,* 112 Mich 211 (1897); *People v Cormandy,* 16 Mich App 517 (1969); *People v Rowls,* 28 Mich App 190 (1970); and in extreme cases after defendant rested, *People v Utter,* 217 Mich 74 (1921); *People v Pena,* 3 Mich App 26 (1966), *reversed on other grounds,* 383 Mich 402 (1970).

Names of witnesses cannot be endorsed at time of trial where their existence and identity were known earlier, the delay is not satisfactorily explained, and their unanticipated presence at trial would prejudice one of the parties. *People v Howes,* 81 Mich 396 (1890); *People v Gilleylen,* 31 Mich App 416 (1971); *People v Hocquard,* 33 Mich App 325 (1971); *People v Hall,* 48 Mich 482 (1882); see also *People v Karamol,* 173 Mich 354 (1912).

Ordinarily, late endorsement should be permitted and a continuance granted to obviate potential prejudice that might result. See *People v Hocquard, supra; People v Rowls, supra.* All that is necessary is that the objecting party have time to interview the witness before he is called to testify, and to investigate facts bearing on his credibility, when appropriate. *People v Zaluski,* 28 Mich App 647 (1970).

We consider it only fair that defendants be extended the same leeway as prosecutors in having witnesses endorsed after the filing of the information. Consequently, defendant's motions in the case at bar were timely with respect to all five of the named witnesses.

Furthermore, the prosecutor is hardly in a position to challenge the timeliness of defendant's motions. At least two months before trial the prosecutor was on notice of, and duty bound to obey, a court order to the effect that there might be res gestae witnesses unknown to him. He cannot claim lack of knowledge where, as here, he chooses to make no further investigation into the facts of the case after filing the information. *Cf. People v June,* 34 Mich App 313 (1971).

The prosecutor seems to be of the opinion, since the statute speaks of "witnesses known to him at the time of filing [the information]", that by purposely refusing to conduct an investigation to determine the existence of additional res gestae witnesses once the information has been filed, he can meet his statutory duty. Such a sanguinary view of the high office of public prosecutor violates fundamental notions of fairness and diligence, repudiates the public trust reposed in the prosecutor, who owes duties to both the state and the defendant, and is incorrect as a matter of law. See *People v Tann,* 326 Mich 361 (1949); *People v Tamosaitis,* 244 Mich 258 (1928); *People v Barker,* 18 Mich App 544 (1969); *People v Eugene Harris,* 43 Mich App 531 (1972); see also *Barber v Page,* 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968).

The statute, which refers to the date on which the information is filed, assumes that by that time the prosecutor will have fully investigated the facts. It does not take a great deal of legal acumen

or common sense to realize that, out of a crowd of more than 1000 persons, it is highly improbable that only six policemen, and no one else, observed the defendant immediately before, or at the time, he allegedly threw the rock which struck Officer Bunten, and immediately thereafter. Yet the prosecutor made no effort to locate such persons, to the point of failing even to take advantage of the efforts of the city's investigating commission to determine who else might have noticed the defendant. But the prosecutor preferred to rely stubbornly on what he considered to be a lack of legal duty towards these potential witnesses, to such an extent that his fairness must be considered in doubt, and he will not be heard to object on such technical grounds as timeliness.

The purpose of the statute is to protect defendants from false accusations by requiring disclosure of the whole of the res gestae, by preventing the suppression of testimony favorable to the accused, and by extending to them the benefits of cross-examination. *People v Raider,* 256 Mich 131, 135 (1931). On this appeal, the people contend that there was no duty incumbent upon them to endorse the five named witnesses requested by the defense, because their testimony would have been "merely cumulative" to the prosecutor's witnesses, in that the six policemen who were endorsed and called by the prosecutor testified to the whole of the res gestae, citing *People v Kindra,* 102 Mich 147 (1894); *Bonker v People,* 37 Mich 4 (1877) (which by its terms limits the exception for cumulative witnesses to non-violent crimes); *People v Bartlett,* 312 Mich 648, 654–655 (1945); *People v Reynold,* 20 Mich App 397, 399 (1969).

But the cases just cited differ from the instant case. For instance, in *People v Kindra, supra,* the people produced three witnesses who testified that

defendant's saloon had been illegally open at night; the defendant countered by producing eight witnesses, all of whom testified that the saloon was not open on the night in question. *Kindra, supra,* at 150.

In the case at bar, six police officers gave their version of the alleged rock-throwing incident. No prosecution witness denied that the occurrence took place or claimed defendant was not involved. Darryl Conliffe, called by the defense when the prosecutor refused to call him, testified that the defendant did not throw a rock. Defendant also testified that he did not throw a rock.

Obviously, testimony which contradicts other testimony in the record, in such circumstances, cannot be said to be "merely cumulative". We must be chary in evaluating the prosecutor's contention of cumulativeness where, as here, the people called six witnesses, all of whom were police officers, whose testimony was in itself cumulative. The prosecution should be estopped from asserting this exception to the statute in such an unfair, blatantly discriminatory fashion. See Code of Professional Responsibility, Canon 7, Ethical Consideration 7-13(1) and (3);[2] Disciplinary Rule 7-103(B),[3] 385 Mich lxxx.

---

[2] "EC 7-13 The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute. * * * (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts. With respect to evidence and witnesses, the prosecutor has responsibilities different from those of a lawyer in private practice; the prosecutor should make timely disclosure to the defense of available evidence, known to him, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecutor's case or aid the accused."

[3] "DR 7-103 Performing the Duty of Public Prosecutor or Other Government Lawyer.

But in any event Conliffe's testimony was most assuredly not cumulative. On the contrary, it was essential to protect the defendant from a false accusation.

At the trial level, prosecutorial claims of cumulativeness should be viewed with a jaundiced eye; on appeal, this Court will carefully scrutinize the lower court's ruling when it results in excusing the people from calling one whom they have a duty to produce as a witness, where, as here, defendant has made timely objection. We therefore reject the claim that the five witnesses whose endorsement defendant sought would have been cumulative.

We therefore proceed to a determination of whether any or all of the five named persons was a res gestae witness.

Preliminarily, we note that prudent practice, in doubtful cases, is to endorse a witness conditionally. The witness may then be subject to voir dire and the trial court thereby enabled to rule intelligently on the question of whether or not he is a res gestae witness. See *People v McCrea,* 303 Mich 213 (1942), *cert den,* 318 US 783; 63 S Ct 851; 87 L Ed 1150. If it is then determined that the witness is a res gestae witness, the prosecutor may commence his examination. Otherwise, the witness may be excused, subject to being called by the defendant at a later time. Such a procedure would drastically reduce the incidence of appeals based on failure to endorse res gestae witnesses.

---

"(B) A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."

## V

A. Eric Siegel and Sara Krulwich

The people argue that Mr. Siegel and Ms. Krulwich are not res gestae witnesses, since they did not observe the defendant until after the rock was allegedly thrown, and contend that if they were not eyewitnesses to the rock-throwing they cannot be res gestae witnesses.

No exact, precise definition of "res gestae witness" can be formulated. Assuredly, the term embraces eyewitnesses to the corpus delicti of a crime. But where a person is present at the scene of an alleged crime, at the time of the alleged crime, has occasion to observe his surroundings, *People v Jessie Jackson,* 30 Mich App 438 (1971), and sees no crime, he too must be considered a res gestae witness, whom the people are obliged by law to call as a trial witness. This is but one example of one of the parameters that define a res gestae witness: a witness whose testimony is reasonably necessary to protect the defendant against a false accusation. *People v Thomas,* 34 Mich App 30 (1971). This rule applies where it is at all probable that any part of the transaction may be undisclosed, or where a fair presentation of the circumstances surrounding the alleged crime cannot otherwise be made to the court or jury. *People v Kayne,* 268 Mich 186 (1934); *People v Bartlett,* 312 Mich 648 (1945).

Thus, for example, in a prosecution for a murder which occurred during a bank robbery, where the identity of the perpetrator of the crime was in dispute, and where there were no eyewitnesses to the killing, but two bystanders saw the murderers flee the bank building, the prosecutor's failure to endorse the names of those two witnesses on the Information and to produce them at trial was

reversible error, as defendant had no knowledge that such witnesses existed, and they indicated to the prosecutor that they could not identify defendant as the murderer. *People v Blazenzitz,* 212 Mich 675 (1920).

It is not even necessary that a witness be on the scene at the time a crime is committed in order to be a res gestae witness. *People v Jelks,* 33 Mich App 425, 430 (1971) (repair garage personnel, where scene of alleged crime was defendant's automobile, and defendant claimed his car was in a garage for repairs during relevant time period); *People v Ake,* 362 Mich 134, 136–137 (1961) (sheriff's deputies who heard decedent utter threats against wife in prosecution of wife for murder of husband, where defense of self-defense raised); *People v Etter,* 81 Mich 570, 572–573 (1890) (one of two witnesses present at birth of complaining witness in statutory rape trial, where age of complainant material and disputed); *People v Kayne, supra,* 268 Mich at 190–191 (doctor who was not eyewitness to accident but treated star prosecution witness for physical injuries which formed the basis for alleged scheme to obtain money under false pretenses); *People v Tann,* 326 Mich 361 (1949) (rape prosecution against physician; abuse of discretion not to require endorsement of name of woman who was in living room outside office from time victim entered until she left it); *People v Dickinson,* 2 Mich App 646, 652–653 (1966) (physicians who examined 13-year-old prosecutrix 2 days after alleged statutory rape must be endorsed and called by prosecution); *People v Kelly,* 30 Mich App 154 (1971) (essentially the same as *Dickinson).*

Thus, the fact that Siegel and Krulwich did not notice the defendant until his arrest was being effectuated does not preclude their being res gestae

witnesses. Defendant's arrest was sufficiently close to the alleged rock-throwing as to cast some light on the factual issues in the case, as the trial judge ruled. The prosecutor impliedly adopted this view by endorsing and calling four policemen whose testimony related solely to defendant's arrest. Although the question is a close one, every reasonable doubt must be resolved in favor of endorsing and calling a witness when defendant insists on his rights. *People v Kayne, supra.* We therefore hold that both Siegel and Krulwich are res gestae witnesses; consequently, it was reversible error to fail to endorse their names on the information and call them as the people's witnesses.

B. Robert Evans

As noted previously the prosecution contends that they are excused from endorsing Evans on grounds that he is an accomplice, citing *People v Van Alstine,* 57 Mich 69 (1885); *People v Knoll,* 258 Mich 89, 98 (1932); *People v Sain,* 34 Mich App 82 (1971). In support of this argument, the prosecutor claims to have a photograph, taken at the demonstration, showing Evans with a rock in his hand. The photograph is not part of the record, and on that basis alone we would be justified in rejecting the contention that Evans is an accomplice. But assuming that such a photograph exists and can be produced, Evans' status as defendant's accomplice has not been established.

In the early case of *People v McCullough,* 81 Mich 25 (1890), defendant McCullough was charged with manslaughter, in that he allegedly threw a rock which struck and killed one Cunningham. Two others, Murray and Wiley, were informed against jointly with McCullough, though McCullough was tried separately. It appeared that all three threw one or more stones at the deceased,

though all acted independently. Thus, Murray and
Wiley were not accomplices of McCullough, and
the prosecutor was duty bound to call them as
witnesses at McCullough's trial. *McCullough, supra,* at 35–36.

The situation is precisely the same in the instant case. There is nothing to show that Evans
acted in concert with defendant Harrison. Failure
to endorse Evans on the information and produce
him as a witness for the people was therefore
reversible error.

## C. Darryl Conliffe

The record shows that Conliffe is a good friend
of the defendant. The people contend that, by
virtue of his relationship to the defendant, they
are excused from endorsing and calling him, citing
*People v Raider,* 256 Mich 131 (1931); see also
*People v Ake, supra.* Moreover, at trial the prosecutor claimed that he was further excused from
endorsing and calling Conliffe because he did not
believe Conliffe's story, citing *People v Williams,*
118 Mich 692 (1898), because his testimony was in
the nature of alibi, and because Conliffe's testimony was favorable to the defendant.

The last reason just referred to may be rejected
summarily. It has been the settled law of this state
since at least *Hurd v People,* 25 Mich 405 (1872),
that a prosecutor is not at liberty, in the trial of a
criminal case, to select and call only such witnesses as are most favorable to the prosecution,
when there are others who are in a position to
know, and do in fact know, as much about the
transaction.

"The prosecutor in a criminal case, is not at liberty,
like a plaintiff in a civil case, to select out a part of an
entire transaction which makes against the defendant,

and then, to put the defendant to the proof of the other part, so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed; especially, if it appears to the court that the evidence of the other portion is attainable. The only legitimate object of the prosecution is, 'to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence.' The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community. And, according to the well-established rules of the English courts, all the witnesses present at the transaction, should be called by the prosecution, before the prisoner is put to his defense, if such witnesses be present, or clearly attainable. See *Maher v The People,* 10 Mich, 225, 226 [1862]. The English rule goes so far as to require the prosecutor to produce all present at the transaction, though they may be the near relatives of the prisoner. See *Chapman's case,* 8 C & P, 559; *Orchard's case,* Id., note *Roscoe's Cr Ev,* 164. Doubtless, where the number present has been very great, the production of a part of them might be dispensed with, after so many had been sworn as to lead to the inference that the rest would be merely cumulative, and where there is no ground to suspect an intent to conceal a part of the transaction. Whether the rule should be enforced in all cases, when those not called are near relatives of the prisoner, or some other special cause for not calling them exists, we need not here determine. But, certainly, if the facts stated by those who are called show *prima facie,* or even probable reason for believing that there are other parts of the transaction to which they have not testified, and which are likely to be known by other witnesses present at the transaction, then such other witnesses should be called by the prosecution, if attainable, however nearly related to the

prisoner. But (though no objection seems to have been made on the trial), we allude to this subject here, for the purpose of calling attention to the evident disregard, on the trial of this case, of the rule laid down by this court, in *People v Maher,* above cited. According to the rule there laid down, and from which we see no reason to depart, the prosecution should have been put to call Jerome Evans at least, who was present at the first assault, and took part in stopping the affray, as shown by the witness Dow, on the part of the prosecution. In the very nature of the case, he was the people's witness, and should have been called by them, he being, as is evident, attainable, and subsequently sworn for defendant; and it appeared from his testimony, that he heard the conversation leading to the first assault, at an earlier stage than Dow; and no relationship to, or complicity with the defendant, is shown or pretended."

*Hurd v People, supra,* 25 Mich at 416–417; *People v Etter, supra,* 81 Mich at 572; Code of Professional Responsibility, *supra.*

Similarly, Conliffe's testimony was not in the nature of alibi. An alibi places defendant elsewhere than the scene of the crime at the time the crime is committed. *People v Marvill,* 236 Mich 595, 597 (1926). Conliffe placed defendant at the scene of the alleged crime, but averred that, to his knowledge, defendant did not perpetrate an act of violence.

Whether or not the prosecutor believed Conliffe's story is irrelevant. His expression of a personal opinion regarding the credibility of a witness was improper. Code of Professional Responsibility, Canon 7, Ethical Consideration 7-24;[4] Disciplinary Rule 7-106 (C) (4), 385 Mich lxxxi.[5]

---

[4] "EC 7-24 In order to bring about just and informed decisions, evidentiary and procedural rules have been established by tribunals to permit the inclusion of relevant evidence and argument and the exclusion of all other considerations. The expression by a lawyer of his personal opinion as to the justness of a cause, as to the credibility

Reliance on *People v Williams, supra,* for a contrary position is misplaced. In *Williams,* several witnesses swore that the unendorsed witness was not at the scene of the crime. The absent witness's deposition was used by the defendant, and showed that not only was her testimony cumulative, but that she ran away without seeing the whole affair. At no point did the court defer to a prosecutorial assertion that the witness was a prevaricatress whose testimony was not worthy of belief. It is axiomatic that the credibility of any witness is a matter for the trier of fact. *People v Miller,* 301 Mich 93 (1942); *People v McIntosh,* 6 Mich App 62 (1967); *People v Floyd,* 15 Mich App 284 (1968); *People v Crittle,* 38 Mich App 118 (1972); *People v Blackwell,* 17 Mich App 377 (1969). Disbelief by the prosecutor of Conliffe's testimony is therefore insufficient reason to excuse compliance with MCLA 767.40; MSA 28.980.

We observe parenthetically that the prosecutor has the right, granted by statute, to impeach any witness he is obliged by law to call. MCLA 767.40a; MSA 28.980(1) provides:

---

of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of fact. It is improper as to factual matters because admissible evidence possessed by a lawyer should be presented only as sworn testimony. It is improper as to all other matters because, were the rule otherwise, the silence of a lawyer on a given occasion could be construed unfavorably to his client. However, a lawyer may argue, on his analysis of the evidence, for any position or conclusion with respect to any of the foregoing matters."

[5] "DR 7-106 Trial Conduct.

\* \* \*

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

\* \* \*

"(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

"Witnesses whom the people are obliged by law to call as res gestae witnesses may be impeached the same as though such witnesses had been called by the respondent."

This is the proper procedure, to be exercised cautiously, when the prosecutor in good faith suspects that an endorsed res gestae witness is not telling the truth.

Finally, the argument that Conliffe did not have to be endorsed as a witness because of his relationship to the defendant lacks merit. *People v Raider, supra,* purported to recognize such an exception in cases of close blood relationship. See also *People v Ake, supra; Hurd v People, supra.* Whatever the validity of the rule, we see no reason to extend it, and every reason to apply it narrowly and sparingly. Since most people associate with friends and relatives, it would then be a rare case in which the prosecutor would have to call a witness favorable to the defendant, if such exception were the law. We decline to engraft exceptions on the statute that would reduce it to a nullity.

It was reversible error to refuse to endorse Darryl Conliffe on the information.

D. Maurice Tate

From what has been indicated with respect to Tate, who was present at the trial itself, the prosecutor had ample opportunity at time of trial to discuss with him anything Tate might have known about the facts of the case. In failing to avail himself of the opportunity presented, the prosecutor was remiss in his duty.

From the record before us, there is no way to conclusively determine, based on affidavits or otherwise, whether Tate is indeed a res gestae witness. Defense counsel claims that he is, and no rebuttal or challenge is made to such claim by the

prosecutor. We must therefore assume that Tate could offer material testimony.

The prosecutor, during the January 25 motion hearing, indicated that Tate was in Florida, and offered that as justification for failing to contact him. The prosecutor must make a showing, on the record, of due diligence in his efforts to locate res gestae witnesses. *People v Barker,* 18 Mich App 544, 547–549 (1969); *People v Eugene Harris, supra;* see also *People v Zabijak,* 285 Mich 164, 171–173 (1938); *People v King,* 32 Mich App 167 (1971); *People v Stephen,* 31 Mich App 604 (1971); *People v Haywood,* 28 Mich App 459 (1970); *People v Pruitt,* 28 Mich App 270 (1970); *People v Russell,* 27 Mich App 654 (1970); *People v Alexander,* 26 Mich App 321 (1970). Where the witness is outside the state, statutory procedures must be invoked to procure his attendance. See *People v Nieto,* 33 Mich App 535, 539 (1971).

It was reversible error for the prosecutor to fail to endorse and call Maurice Tate as a res gestae witness.

## VI

The fact that defendant himself called three of the five persons named as witnesses, and the fact that the remaining two were present at trial, does not obviate the error. One of the purposes of the statute is to give defendant the benefit of cross-examination. When defendant himself calls a witness, he vouches for the credibility of that witness, and in most instances cannot impeach his own witness. McCormick, Evidence (2d ed), § 38, pp 75–78; *cf.* MCLA 600.2161; MSA 27A.2161 (the civil adverse-party statute). As a matter of fact, the prosecutor, during the trial of the instant case, thrice objected to defense counsel leading a wit-

ness, something defense counsel could freely do on cross-examination.

Equally importantly, we are not blind to the fact that the credibility of a witness may be enhanced or detracted from, depending on which party calls him as a witness. As was said in *People v Kayne, supra,* 268 Mich at 192:

"The materiality of Dr. Atler's testimony is apparent from the facts hereinbefore stated. It was seriously important to the defendant that the doctor should be called as a witness for the people. This not only gave defendant the right to cross-examine the witness, but it also saved defendant from being bound by the testimony given by the witness. In the absence of a showing of inability to produce this witness, who appears to have been a resident of the county and presumably readily reached, reversible error was committed by refusing defendant's application to have the witness indorsed on the information and produced in court by the prosecution."

## VII

Defendant also challenges certain remarks made by the prosecutor during closing argument. In view of the necessity of granting defendant a new trial in any event, we note only that such remarks should be avoided on any retrial. Presumably, they were made inadvertently. However, we intend to scrutinize future cases coming before us in which the same prosecuting attorney appears for the people. If a pattern of improper remarks is discovered, we will not hesitate to reverse any such case for new trial, and to institute appropriate disciplinary action.

"Unless we enforce the rules we encourage their violation and add to the burden of the appellate courts.

Our frequent strictures against this kind of argument mean little unless we are prepared to reverse and require a new trial. A prosecutor who crosses a clearly defined line, and a trial judge who makes no effort to stop him, have only themselves, not the appellate courts, to blame if a judgment of conviction is reversed and the case must be retried because of improper argument." *People v Farrar,* 36 Mich App 294, 299–300 (1971).

Reversed and remanded for new trial. Any monies paid by the defendant pursuant to sentence shall be refunded.

So ordered.

All concurred.