PEOPLE v ANDERSON

1. APPEAL AND ERROR—CRIMINAL LAW—FINDINGS OF FACT—BENCH
     TRIAL—COURT RULES.

   The Court of Appeals will only reverse a trial court sitting in a
     bench trial if its findings of fact are clearly erroneous, but the
     Court of Appeals must review all of the trial court's findings to
     place any erroneous statements in the findings in the context of
     all the findings to determine if there is reversible error (GCR
     1963, 517.1).

2. APPEAL AND ERROR—WITNESSES—CONFLICT IN TESTIMONY—COURTS
     —BENCH TRIAL.

   The Court of Appeals will not disturb a trial court's decision as to
     which witnesses to believe when there is a conflict of testimony
     in a bench trial; the trial court has the opportunity to observe
     all the witnesses, while the Court of Appeals must look at a
     cold record.

3. CRIMINAL LAW—BENCH TRIAL—ALIBI DEFENSE—INSTRUCTIONS TO
     JURY—INCORRECT TEST.

   Use by a trial court of an incorrect standard in weighing the
     testimony of witnesses concerning an alibi defense is not error
     where the trial occurred over four months before the Supreme
     Court disapproved that standard for jury instructions and did
     not require that the holding be made retroactive.

4. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECUTOR'S
     DUTY—STATUTES.

   It is the duty of the prosecution to indorse and call all res gestae
     witnesses or satisfactorily explain why they cannot be produced
     (MCLA 767.40).

5. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—WORDS AND
     PHRASES.

   The term "res gestae witness" includes a person who is present at

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 4 Am Jur 2d, Appeal and Error § 76.
[3] 75 Am Jur 2d, Trial §§ 731–736.
[4–6] 29 Am Jur 2d, Evidence § 708.

the scene of the crime at the time of the crime and has occasion to observe its surroundings.

6. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—INDEPENDENT KNOWLEDGE.

A person who has no independent knowledge of any part of a criminal transaction is not a res gestae witness, even though it is not necessary that a res gestae witness be a person present at the scene of the crime at or near the time of the crime.

Appeal from Wayne, Joseph G. Rashid, Jr. Submitted June 12, 1975, at Detroit. (Docket No. 21215.) Decided September 11, 1975.

Doris J. Anderson was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*James R. Jenkins,* Assistant State Appellate Defender, for the people.

Before: BRONSON, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. Defendant was convicted on March 14, 1974, following a bench trial, of larceny in a building, MCLA 750.360; MSA 28.592. She was sentenced to one year probation and payment of court costs. Defendant appeals as of right.

Prior to September 17, 1973, the defendant had served as the bookkeeper and office manager for radio station WIID for 3-1/2 years. On that date, she was fired by the station manager because he

was dissatisfied with the quality of her work. A dispute arose between the defendant and the radio station concerning her final paycheck which she did not receive until she had shown the new bookkeeper some of the intricacies of the station's bookkeeping system.

The basic testimony linking the defendant to the larceny was that of Steven Wild, another station employee. He testified that on Sunday, November 25, 1973, he was in charge of the station. He observed the defendant enter the lobby of the station where the defendant informed Mr. Wild that she had come to take some entertainment passbooks that were in the station manager's office.[1] To get into the manager's office it was necessary to open combination locks on two doors. Mr. Wild further testified that he observed the defendant get into a car with several of the passbooks. The station manager testified that the combinations had not been changed since the defendant had been fired.

The defendant interposed an alibi defense. She claimed that she and her mother had gone to visit her grandparents' graves near North Branch that day.[2] In support of this alibi, defendant and her mother testified as to the details of the trip. Although neither was certain as to many of the intermediate times, the beginning and ending of their trip was verified by a neighbor. Her mother's sister also testified that they had stopped by her apartment in Troy both going to and coming from the cemetery.

---

[1] Entertainment passbooks are a book of coupons entitling the holder to receive a discount at various area business establishments. The discounts almost always take the form of the holder receiving a reduced price on the second item of a two-item bill. The station used the passbooks as giveaways in promotions.

[2] North Branch is a small town in Lapeer County approximately 55 miles north of Detroit. The defendant and her mother are residents of Westland, a suburb of Detroit in western Wayne County.

Defendant initially contends that the trial court made erroneous findings of fact. Defendant points out two statements of the trial court that are not supported by the evidence. First, the trial court said that all the defendant's alibi witnesses were related to the defendant. On this point the defendant is correct but later the court recognized that one of the alibi witnesses was a neighbor. There is no evidence in the record to suggest that the defendant's neighbor was related to the defendant. Second, the trial court stated that a certain statement made by the complaining witness concerning his reasons for discharging the defendant had been corroborated by another witness. The defendant is again correct in that the second witness never did make such a statement.

On appeal, this Court will only reverse the trial court if its findings of fact are clearly erroneous. GCR 1963, 517.1, *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918, 921 (1973). Although these statements are clearly erroneous, we must look at all the trial court's findings to place these statements in their proper context. *People v Jackson, supra,* see *People v Rogers,* 60 Mich App 652; 233 NW2d 8 (1975). Looking at these statements in the context of all of the trial court's findings, we do not find them to be reversible error.

In a lucid set of findings of fact the trial court explained why it chose to accept Steven Wild's testimony. It stated that it found him convincing, unshakable on cross-examination, and without interest in the case. In order to believe Mr. Wild it was necessary to disbelieve the defendant's alibi. Although the trial court once misstated the neighbor's relationship with the defendant, most parts of her testimony were consistent with either version of the day's happenings. All the neighbor was

able to testify to was that the defendant and her mother left their home around 12:30 p.m. and returned home before 6 p.m. and that they had asked her the day before to accompany them to the cemetery. The other alibi witnesses were all related to the defendant. The other misstatement went to only the collateral issue of why the defendant was discharged in September and not to the central issue of the events of November 25.

Defendant also contends that the trial court did not apply the same standard to all the witnesses' testimony. In weighing the defendant's witnesses' testimony the trial court spoke of their interest in the outcome. Even though the defendant claims that the trial court did not apply that standard to Mr. Wild's testimony, the defendant is mistaken. Although not saying so in so many words the trial court found that Mr. Wild's only interest was in telling the truth. Since the trial court has the opportunity to observe all the witnesses, while we must look at a cold record, we will not disturb the trial court's decision of whom to believe when there is a conflict in testimony. Accord, *People v Ballenberger,* 51 Mich App 353; 214 NW2d 742 (1974), *lv den* 392 Mich 753 (1974).

The defendant also alleges that the trial court applied the wrong standard in judging her alibi defense. The standard that it applied was that an alibi is "the easiest defense to establish but the hardest to disprove". In *People v McCoy,* 392 Mich 231, 235; 220 NW2d 456, 460 (1974), the Supreme Court disapproved this standard for jury instructions. However, the Supreme Court did not require that *McCoy* be made retroactive. *People v McCoy, supra,* at 240. Thus, even though the trial court used this standard in weighing the testimony of the witnesses, there was no error, since the trial in

this case occurred over four months before *People v McCoy, supra,* was decided. *People v Phelps,* 57 Mich App 300; 225 NW2d 738 (1975).

Defendant's fourth allegation of error concerns the failure of the prosecution to endorse and produce two "res gestae" witnesses. It is the duty of the prosecution to endorse and call all res gestae witnesses or satisfactorily explain why they cannot be produced. MCLA 767.40; MSA 28.980; *Hurd v People,* 25 Mich 405, 417 (1872), *People v Koehler,* 54 Mich App 624, 637; 221 NW2d 398, 404–405 (1974). The two alleged res gestae witnesses were disclosed by Steven Wild's testimony. They were the station's chief engineer, to whom Mr. Wild made his first report, and an unidentified person who was in the control room during the incident.

The term res gestae witness has been defined to include a person who is present at the scene of the crime at the time of the crime and has occasion to observe its surroundings. *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973), *People v Jesse Jackson,* 30 Mich App 438; 185 NW2d 897 (1971), *lv den* 385 Mich 766 (1971), see *People v Tann,* 326 Mich 361; 40 NW2d 184 (1949). However, the unidentified person in the control room does not come within this definition. Mr. Wild's testimony indicated that the control room was on the other side of the building from the offices and has no view of either the manager's office or the lobby. Consequently, this person had no opportunity to observe what occurred in the lobby or the office.

The defendant argues that since Mr. Wild first communicated the facts to the chief engineer, the chief engineer is a res gestae witness. Although it is not necessary to being a res gestae witness that the person be at the scene of the crime at or near

the time of the crime, the chief engineer had no independent knowledge of any part of the criminal transaction. *People v Harrison, supra,* see *People v Ake,* 362 Mich 134; 106 NW2d 800 (1961), *People v Kayne,* 268 Mich 186; 255 NW 758 (1934), *cf. People v Jelks,* 33 Mich App 425; 190 NW2d 291 (1971) *lv den,* 386 Mich 768 (1971). The only thing to which this witness could testify is that he received a phone call from Mr. Wild and made a phone call to the station manager. What was said during either phone call would be hearsay. McCormick, Evidence (2d ed), § 246. Since neither of these potential witnesses was a res gestae witness, the prosecution had no duty to either endorse or call them.

*People v Milton,* 393 Mich 234; 224 NW2d 266 (1974), answers negatively defendant's contention that district courts cannot issue arrest warrants or conduct preliminary examinations.

We find no error. Affirmed.