PEOPLE v ABDO

1. WITNESSES—RES GESTAE WITNESSES—CRIMINAL LAW.

A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense.

2. WITNESSES—RES GESTAE WITNESSES—PROSECUTORS—INDORSEMENT OF WITNESSES—STATUTES.

A prosecutor is required to indorse on an information and produce at trial all res gestae witnesses (MCLA 767.40; MSA 28.980).

3. WITNESSES—RES GESTAE WITNESSES—CRIMINAL LAW—CRIMINAL TRANSACTION—RELEVANCE OF TESTIMONY.

A trial court erred in finding that certain witnesses were not res gestae witnesses because they had not witnessed a shooting, where the criminal transaction involved included an altercation in a restaurant, with several participants, followed by the shooting on the street outside the restaurant, and where the only witness to testify as to direct knowledge of the shooting was the victim; the testimony of the unindorsed witnesses to the events inside the restaurant would be relevant to the questions of identity of the assailant and of motive.

4. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—NEW TRIAL.

A defendant was entitled to a new trial where the evidence upon which he was convicted was not overwhelming, credibility was a key issue, the identity of the defendant as the perpetrator of

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 29 Am Jur 2d, Evidence § 708.

Admissibility, as part of res gestae, of accusatory utterances made by homicide victim after act. 4 ALR3d 149.

[2, 5] 41 Am Jur 2d, Indictments and Informations §§ 55, 56, 60.

Power of assistant or deputy prosecuting or district attorney to file information, or to sign or prosecute it in his own name. 80 ALR2d 1067.

[3] 29 Am Jur 2d, Evidence § 711.

[4] 29 Am Jur 2d, Evidence §§ 717–721, 736.

the crime was contested, and where several witnesses whose testimony if allowed to be presented would have been primarily noncumulative and in support of the defense, were erroneously found at a post-trial hearing not to be res gestae witnesses.

5. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—INDORSEMENT OF WITNESSES—CROSS-EXAMINATION.

The fact that a res gestae witness is called as a defense witness does not excuse the prosecutor's failure to indorse the witness; part of the purpose of the res gestae rule is to allow the defendant to cross-examine witnesses called as res gestae witnesses.

Appeal from Wayne, John M. Wise, J. Submitted January 16, 1978, at Detroit. (Docket No. 28476.) Decided March 7, 1978.

Mohammed D. Abdo was convicted of assault with intent to commit great bodily harm less than murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *William Wertheimer,* Assistant Prosecuting Attorney, for the people.

*Gromek & Bendure,* for defendant on appeal.

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and D. C. RILEY, JJ.

D. C. RILEY, J. Defendant Mohammed Daifullah Abdo, arrested and charged with assault with intent to commit murder, MCLA 750.83; MSA 28.278, was found guilty at a bench trial of assault with intent to commit great bodily harm less than murder, MCLA 750.84; MSA 28.279, and sentenced to a prison term of two and one-half to ten years.

He brings the present appeal raising several issues, of which two involve the extensive testimony presented to the trial court.

The incident in question took place during the early morning hours of November 3, 1975, inside and in front of Uncle Sam's restaurant in Dearborn, Michigan. The complainant, Alan Amen, worked as a special claims investigator for the Michigan Employment Security Commission, concentrating on assisting Arabic-speaking claimants. On November 3, Amen attended a party at the restaurant commemorating the owner's loss of his liquor license. There were approximately 200 persons at the restaurant party, with a significant number being of various Arabic nationalities.

Amen testified that the incident began when he was approached by Sultan Saleh, who had acted as an interpreter for an unemployment claimant named Quayed Alhidais. Saleh allegedly accused Amen of abandoning Alhidais' claim and of being anti-Arab. The argument erupted into an attack on Amen, according to his testimony, by various persons including Saleh, Abdullah Nassar, and defendant Abdo. At this point several people, including Houssain (Sam) Mallad, the owner of the restaurant, interceded to break up the fight.

Amen stated that he fled the restaurant when the fighting was quelled. After exiting through the front door, he took two or three steps out into the street in front of the restaurant, and then turned at the sound of activity behind him. He testified that on turning he saw defendant on the sidewalk in front of the restaurant pointing a handgun in his direction, and Sam standing just outside the front door. As he turned back to run, Amen was shot through the arm. He stated that defendant followed him partially across the street and aimed

the gun at him again, but he was not sure if any additional shots were fired.

In addition to Amen, the prosecution presented testimony from four other endorsed witnesses who were present on the night of the shooting. Allen Mallad, the son of Sam Mallad, testified that he saw the start of the fight and eventually wrestled Nassar away from Amen. He did not see or hear the actual shooting, and did not see defendant with a weapon.

Mason Baydoun testified about the argument between Amen and Sultan Saleh, stating that he tried to break up the argument, but that he did not see any fight nor did he see or hear the shooting. He did not remember seeing defendant at the restaurant.

Sultan Saleh admitted arguing with Amen, but denied threatening or striking him. He stated that he left the restaurant by the back door while Amen was still inside. On further examination, it was brought out by the prosecutor that Saleh had been convicted of assault and battery on Amen in Dearborn district court, the charge having arisen from this same incident.

Houssain (Sam) Mallad testified that he had attempted to break up the fight inside of the restaurant. He tried to hold onto Amen but he slipped out of Sam's grasp and went out the front door. Immediately thereafter several other people also slipped past Mr. Mallad and exited from the building. After Sam finally got the door closed, and while *inside* of the building, he heard several shots. He then went outside and saw Amen in the middle of the street. He also saw a group of people, including defendant, on the sidewalk to the right of the front door. He did not see anyone with a gun and did not see Amen shot.

Following all of this testimony, defendant waived the production of several endorsed witnesses, one being Jamal Attareb and the others being police officers and a doctor. The final prosecution witness was Dearborn Police Sergeant Forrest Henry, the arresting officer in charge of the case. Sgt. Henry related the details of defendant's arrest and the substance of a statement made by defendant following his arrest. In the statement defendant said that he was at the restaurant with Sam Mallad, Jeffery Saleh, Mohsen Said (an alias of Abdullah Nassar), and a David (possibly also an alias of Abdullah Nassar). He stated that he attempted to break up the fight between Sultan Saleh and Amen, and later walked outside with Sam Mallad. He denied having a gun, seeing or hearing Amen shot, or doing the actual shooting.

The defense then presented a number of witnesses. Jeffery Saleh (no relation to Sultan Saleh) stated that he saw defendant attempt to break up the fight between Sultan Saleh and Amen. He did not see defendant strike Amen. Just after Amen left the restaurant he, defendant, and around 10 to 15 other persons left, with he and defendant at the head of the group. As the group was walking down the sidewalk to a different restaurant, they heard shots. Jeffery Saleh did not see any shots fired and did not see defendant with a gun.

This testimony of Jeffery Saleh was essentially corroborated by that of Ali Kahdi, Ali Aboubaker, and Abdul Ali, all of whom testified that they were in the group that left Uncle Sam's with Jeffery Saleh and defendant. None of these witnesses saw the shooting.

Defendant Mohammed Abdo was the final defense witness. His testimony coincided with the substance of the previous defense testimony. He

denied threatening, hitting, or shooting Amen and stated that while he heard shots, he did not know that Amen had been shot until the following day.

Following closing arguments, the trial court made the following findings of fact:

"This Court had no difficulty in understanding the witnesses.

"Many of these witnesses were reluctant to testify to part of the happenings of that morning, testifying that they saw nothing. However, it has been established by the complaining witness, and the testimony, that he was shot by the Defendant whom he had seen earlier in Uncle Sam's Restaurant and Bar. The complaining witness's testimony was convincing and forthright. His testimony was substantiated in part by portions of the testimony of both the People's and the defense's witnesses, and when interwoven and taken as a whole, leaves no doubt in the Court's mind.

"I might say that several of the witnesses who testified, such as Sam Mallad and Jeffrey Saleh, who testified for the defense that the Defendant was the first one out of the door after the Complainant had gone out, and there is such other testimony, and the Court does find as a matter of fact, taking into consideration all of the testimony that the People have proven beyond a reasonable doubt, that the Defendant, Mohammed D. Abdo did assault with intent to do great bodily harm less than the crime of murder upon the Complainant, Alan Amen, and does find the Defendant guilty of that offense, the cause having been proven beyond a reasonable doubt as to all the elements of that charge."

Subsequent to appointment of appellate counsel,[1] the case was remanded by this Court, on defendant's motion, to the trial court to allow defendant to bring a motion for new trial. This motion was founded on claims that the decision was against the weight of the evidence and that various al-

---

[1] Defendant's appellate counsel was not also his trial counsel.

leged res gestae witnesses were not endorsed or produced at the trial. Over the course of several hearings, as mandated by *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), testimony was taken from a number of witnesses, including Sgt. Henry, the arresting officer.

Abdullah Nassar (a/k/a Mohsen Said) testified that he did not see the shooting, did not see defendant with a gun, and that he was only contacted to testify after the trial by defendant's appellate counsel.

He admitted that he did participate in a struggle with Alan Amen, but asserted that the fight was in part precipitated by racial slurs uttered by Amen. Nassar testified that Amen was wearing glasses at the time, that Amen removed his glasses during the fight, and that Amen did not retrieve the glasses prior to leaving the restaurant. It was also brought out that Nassar had been convicted of assault on Amen arising from this incident.

Hussain Dubaishi, Saif Abdullah, Hussain Abdulla and Said Ali all testified that they were at Uncle Sam's on the night of the shooting, but did not see or hear the shots fired. Dubaishi stated that Amen left the restaurant ten minutes before defendant left. Saif Abdullah said that Amen left five minutes before defendant. Hussain Abdulla stated that Amen left the restaurant followed by several people, and then defendant and some others left. Ali testified that he talked to defendant in the restaurant after Amen had left.

Sgt. Henry testified as to the efforts made to locate and endorse res gestae witnesses. No attempt was made to endorse any of the witnesses presented at the *Robinson* hearing, or to endorse Jeffery Saleh. Sgt. Henry also stated that Quayet Alhidais was not endorsed after he told Henry

that he was not at the restaurant on the night of the shooting. Alan Amen had testified at the trial that Alhidais was in Uncle Sam's on November 3, 1975.

Following the presentation of this testimony, the trial court made the following ruling:

> "May I say this, Mr. Gromek, you have indicated possible res gestae witnesses, but the testimony of the parties that came in to testify indicated they were not res gestae witnesses. None of them saw the shooting, none of them heard any shots, none of them knew anything would transpire outside.
>
> * * *
>
> "The question involved though, on a Robinson hearing, is whether there are witnesses who should have been indorsed who are res gestae witnesses. On the testimony that I have heard from all the witnesses, I can't say they are res gestae witnesses to the point where this entitles you to a retrial, so the only thing I can say, you have had a complete hearing, you have had an examination under a Robinson Hearing and I find that all the known res gestae witnesses were endorsed and heard, except those waived by defense counsel at the trial and you were not defense counsel. Any names that would have been called to anyone's attention, and that, of course, you are not in a position to know because you didn't try the cause, so you don't know what situation was [sic], would have been endorsed.
>
> "I don't see that the witnesses that have been introduced that they can be considered res gestae witnesses, so I will deny your motion."

As has been often said by this Court, there is no precise definition for a "res gestae witness". Various tests have been set forth to establish the parameters of the prosecution's statutory[2] duty to endorse and produce all res gestae witnesses:

---

[2] MCLA 767.40; MSA 28.980.

"A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." *People v Hadley,* 67 Mich App 688, 690; 242 NW2d 32 (1976).

"The prosecutor is required to indorse on the information and produce at trial all res gestae witnesses. MCLA 767.40; MSA 28.980, *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973). This Court has broadly defined a res gestae witness to include not only one who witnesses a crime but one who is present at the time and place of the crime, observes the surroundings, and sees nothing; that is, one whose testimony is necessary to protect the defendant against false accusation or without whose testimony any part of the transaction may remain undisclosed. *People v Anderson,* 64 Mich App 218; 235 NW2d 746 (1975), *People v Harrison, supra.* Persons present at the time and scene of the crime are presumed to be res gestae witnesses and the prosecutor must prove otherwise. *People v Hicks,* 63 Mich App 595; 234 NW2d 720 (1975), *People v Samuels,* 62 Mich App 214; 233 NW2d 520 (1975). Every reasonable doubt should be resolved in favor of indorsing and producing a person as a res gestae witness when a defendant insists on his rights." *People v Abrego,* 72 Mich App 176, 179; 249 NW2d 345 (1976).

While it is clear that the term "res gestae" includes all eyewitnesses to an alleged crime, conversely a person need not be an actual eyewitness to be presumed to be a res gestae witness.

The trial court, at the conclusion of the *Robinson* hearing, held that the witnesses who testified at the hearing were not res gestae witnesses since they neither saw nor heard the actual shooting. Under the broad definitions of res gestae witnesses employed by this Court, we find the trial court's holding to be clearly erroneous. *People v Abrego, supra.*

The "continuum" of the criminal transaction in

the present case included not only the shooting, which took place outside of the restaurant, but also the argument and fighting inside of the bar which presumably precipitated the shooting. Testimony of witnesses to the events inside of the bar would be relevant to crucial questions of identity and motive. The trial testimony itself is ample evidence of the recognition, at least by the prosecution, of this expanded view of the res gestae of the current offense. Of the six endorsed witnesses presented at the trial only one, Alan Amen, testified as to direct knowledge of the shooting. Four of the prosecution witnesses testified *only* as to the events occurring inside the bar and to their observations after the shooting. If these four witnesses were res gestae witnesses at the time of the trial, it cannot be said that the witnesses who testified at the *Robinson* hearing were any less part of the res gestae.

Having found that the trial court erred in failing to hold that the *Robinson* witnesses were res gestae, the question becomes whether that error mandates a new trial. We believe that it does. The trial evidence against defendant was not overwhelming, consisting for the most part merely of Amen's identification of defendant as his assailant. In such a situation, where credibility becomes the key issue, the weight of testimony supporting the respective positions can have a telling effect. The *Robinson* hearing witnesses testified primarily in support of the defense theory. Their testimony at the trial, particularly since it would have been presented by the prosecution, could have had a significant bearing on the decision.[3]

---

[3] In addition to the witnesses presented at the *Robinson* hearing, the four witnesses called by the defense at trial (excluding defendant) meet the tests for res gestae witnesses as set forth in this opinion. The fact that they were called as defense witnesses does not excuse

In addition, testimony was elicited at the *Robinson* hearing that was clearly non-cumulative to the trial evidence. Abdullah Nassar was the only witness who stated that Amen had been wearing glasses while inside of the restaurant but had lost them prior to the shooting. Hussain Dubaishi and Saif Abdullah placed defendant's departure from the restaurant at five-ten minutes after Amen exited. Hussain Abdulla testified that several people left after Amen but before defendant. All of this evidence was highly relevant on the contested issue of identity. Its absence deprived the trier of fact of a full presentation of the res gestae of the offense:[4]

"The purpose of the statute is to protect defendants from false accusations by requiring disclosure of the whole of the res gestae, by preventing the suppression of testimony favorable to the accused, and by extending to them the benefits of cross-examination." *People v Harrison,* 44 Mich App 578, 588; 205 NW2d 900 (1973).

Since the trial court found that the *Robinson* hearing witnesses were not res gestae, the issues of exceptions to the res gestae rule, such as cumulativeness or exercise of due diligence, were not

the prosecution's failure to endorse them. *People v Harrison,* 44 Mich App 578, 599; 205 NW2d 900 (1973). Part of the purpose of the res gestae rule is to allow the defendant to cross-examine these witnesses. *People v Harrison, supra.*

[4] Although our decision on the res gestae witness issue in itself requires reversal of the conviction, we note in connection with this discussion that defendant also challenges the substance of the court's findings of fact at the trial. We agree with defendant that the court's ruling does not fully comport with our reading of the testimony. We do not view the testimony of Hussain (Sam) Mallad and/or Jeffery Saleh as corroborative of complainant's statements that defendant was the first person out of the bar following him and that, at the moment of the shooting, only himself, defendant, and Sam Mallad were outside of the restaurant. The testimony presented at the *Robinson* hearing only intensifies the conflict between Amen's version of the incident and those of the other witnesses.

reached. Under the facts as presented, we do not feel that any purpose would be served by a remand to determine if the prosecution was excused from calling any or all of these witnesses. We have already discussed why much of this new testimony was not cumulative to the trial evidence. Even though no evidence was presented that the prosecution was aware of the identities of all of these witnesses, due diligence does not excuse the prosecution's failure to endorse. Since the defense discovered some of these witnesses prior to the trial, it must be assumed that a diligent investigation by the police would have resulted in similar discoveries. At least one of the witnesses at the *Robinson* hearing, Abdullah Nassar, was well-known to the police prior to the trial, since he had already been arrested and convicted for his part in the assault on Mr. Amen. We think it advisable that, after the prosecution endorses all res gestae witnesses on a possible retrial, the questions of exceptions to the res gestae rule, particularly in some areas of cumulativeness, be handled by the trial court.

Defendant's conviction is reversed and the cause remanded.