PEOPLE v MUMFORD

1. DRUGS AND NARCOTICS—POSSESSION—INTENT TO DELIVER—CIRCUMSTANTIAL EVIDENCE.

   Possession, like other elements of the corpus delicti of the crime of possessing a controlled substance with intent to deliver, may be proved by circumstantial evidence and reasonable inferences from the evidence.

2. DRUGS AND NARCOTICS—HEROIN—POSSESSION—INTENT TO DELIVER—REASONABLE INFERENCE—JURY.

   A jury could reasonably infer that a defendant possessed heroin with knowledge of its character, and with intent to deliver, where the defendant was alone in an apartment under circumstances indicating he was an inhabitant, there was heroin and paraphernalia for packaging the heroin on a coffee table in the apartment, and defendant brandished a gun when police attempted to search the apartment.

3. CRIMINAL LAW—EVIDENCE—ELEMENTS OF CRIME—CORPUS DELICTI—PROOF—EVIDENCE—CONFESSIONS.

   The corpus delicti of a crime must be proved by evidence independent of the accused's confession; however, admission of a defendant's confession was not error where there was evidence independent of defendant's confession on each element of the charged crime.

4. CRIMINAL LAW—SPEEDY TRIAL—FACTORS.

   Four factors are to be analyzed when a denial of the right to a speedy trial is alleged: length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant (US Const, Am VI; Const 1963, art 1, § 20).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 25 Am Jur 2d, Drugs, Narcotics and Poisons § 47.
[3] 29 Am Jur 2d, Evidence § 530.
   30 Am Jur 2d, Evidence § 1142.
[4, 5, 7] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.
[6] 17 Am Jur 2d, Continuance § 2.
   20 Am Jur 2d, Courts § 20.
[8–11] 29 Am Jur 2d, Evidence §§ 723, 724.

5. Criminal Law—Speedy Trial—Improper Delay—Pursuing Legal Remedies.

Time consumed because a defendant is pursuing legal remedies is not improper delay when assessing an alleged denial of the right to a speedy trial.

6. Continuance—Reasons for Continuance—Courts—Docketing System—Duty to Maintain.

Trial courts have a duty to maintain a docketing system which sets forth the reasons for continuances.

7. Criminal Law—Speedy Trial—18-Month Delay—Pretrial Proceedings—Objections.

A defendant was not denied his right to a speedy trial by an 18-month delay between arrest and trial where part of the delay was attributable to pretrial proceedings at defendant's request, defendant did not complain of the delay before appeal, and the absence of an objection indicates that defendant did not feel prejudiced by the delay and suggests the possibility that some of the unexplained delay was to accommodate defendant or his counsel.

8. Witnesses—Criminal Law—Res Gestae Witnesses—Eyewitnesses—Corpus Delicti Protection of Defendant.

The term "res gestae witness" embraces eyewitnesses to the corpus delicti of a crime, but where a person is present at the scene of an alleged crime, at the time of the alleged crime, and sees no crime, he too must be considered a res gestae witness; a res gestae witness is a witness whose testimony is reasonably necessary to protect the defendant against a false accusation.

9. Witnesses—Criminal Law—Res Gestae Witnesses—Duty to Produce—Due Diligence—Cumulative Testimony.

The production of a res gestae witness may be excused where the prosecution makes a showing of due diligence in attempting to produce the witness or where the testimony of the witness would be merely cumulative.

10. Witnesses—Criminal Law—Res Gestae Witnesses—Indorsement of Witnesses—Mistake.

Two names were properly ordered stricken from a list of indorsed witnesses on an information where there was no lead as to the identity of the two persons and police officers diligently attempted to locate them, there was no indication that the two persons were eyewitnesses to the crime, and it may be reasonably concluded that the two names were mistakenly listed on the information.

11. Witnesses—Criminal Law—Res Gestae Witnesses—Scene of
    Arrest.

    Two witnesses who arrived on the scene of a crime after all
    activity pertinent to the arrest of a defendant had been con-
    cluded were not res gestae witnesses.

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 1 January 15, 1975, at Lansing. (Docket No. 19573.) Decided April 8, 1975.

William E. Mumford, Jr., was convicted of possessing heroin with intent to deliver. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David S. Swartz,* Assistant Prosecuting Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: T. M. Burns, P. J., and D. E. Holbrook and M. J. Kelly, JJ.

M. J. Kelly, J. Defendant was convicted of possessing a controlled substance, heroin, with intent to deliver. MCLA 335.341(1); MSA 18.1070(41)(1). He appeals of right.

Police officers, attempting to execute a search warrant, arrived at a certain apartment. They went to the door in "street" or "hippy" clothes and requested that defendant open it. He refused. They entered and found defendant, clad only in undershorts, standing near a coffee table in the living room with gun in hand. He was the sole occupant of the apartment at that time. A strainer, tinfoil, a small measuring spoon, a piece of cardboard, and $50 to $60 cash were on the table. An undercover officer testified at trial that these items were com-

monly used to cut and package heroin for sale. There was also a vial on the coffee table. It contained 7.83 grams of a substance that consisted of 11-1/2% pure heroin, lactose and mannitol.

In the bedroom of the apartment there were clothes which fit defendant, his wallet, mail addressed to him, and several prescription bottles with defendant's name on them. Also a wedding album containing defendant's marriage license and photographs of his wedding.

It is claimed that the trial judge erred in admitting into evidence defendant's admission, after having been given the *Miranda*[1] warnings, that, "I don't use that stuff, I just sell it". More precisely, defendant claims that this violated the rule that the corpus delicti of a crime must be proved by evidence independent of the accused's confession. *People v Lane,* 49 Mich 340; 13 NW 622 (1882), *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), adopting the dissenting opinion of Judge (now Justice) LEVIN in *People v Allen,* 39 Mich App 483, 494; 197 NW2d 874, 880 (1972). Its application frames the issue before us.

The elements of the crime are set forth in the statute. In pertinent part, MCLA 335.341 (1); MSA 18.1070 (41) (1), reads:

"it is unlawful for any person to * * * possess with intent to * * * deliver, a controlled substance."

The term "possession" connotes dominion or the right of control over the drug with knowledge of its presence and character. *People v Germaine,* 234 Mich 623, 627; 208 NW 705, 706 (1926). The term "possession" is to be construed in its com-

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

monly understood sense and may encompass both actual and constructive possession. *People v Harper,* 365 Mich 494, 506–507; 113 NW2d 808, 813–814 (1962); *cert den,* 371 US 930; 83 S Ct 302; 9 L Ed 2d 237 (1962). Possession, like other elements of the corpus delicti, may be proved by circumstantial evidence and reasonable inferences therefrom. *People v Allen,* 390 Mich 383, *supra, Peterson v Oceana Circuit Judge,* 243 Mich 215; 219 NW 934 (1928).

The circumstantial evidence bearing on possession in this case consists of defendant's exclusive presence in the apartment under circumstances indicating that he was an inhabitant, not a mere visitor. Additionally, defendant was near the coffee table on which, in plain view, were what appeared to be narcotics and narcotics paraphernalia. Finally, the jury could reasonably infer from the fact that defendant brandished a gun, that he was exercising control over the heroin with knowledge of its character.

According to the testimony, the setup on the table was for packaging the vial contents (7.83 grams of a mixture of 11-1/2% heroin, lactose and mannitol) in foil packets. We cannot say that intent to deliver is not inferable from the contents and paraphernalia.

It is undisputed that the heroin mixture was a controlled substance within the ambit of MCLA 335.341(1); MSA 18.1070(41)(1). Since there was evidence on each element of the crime independent of defendant's confession, that confession was properly admitted. We believe therefore that the motion for directed verdict was properly denied.

Defendant further claims that he was denied the right to a speedy trial guaranteed by US Const, Am VI and Const 1963, art 1, § 20. We are re-

quired to analyze and weigh four factors: length of delay, the reason for the delay, defendant's assertion of his right, and prejudice to the defendant. *Barker v Wingo,* 407 US 514, 530; 92 S Ct 2182, 2192; 33 L Ed 2d 101, 117 (1972), *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972), *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973).

The delay between arrest and trial, about 18 months, is almost identical to that condemned in *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). However, no constitutional violation was found in instances where the delay was 15 months,[2] 19 months,[3] 27 months,[4] and 5 years.[5] All in all, this factor would weigh for defendant if the delay were clearly attributable to appellee.

Part of the delay was attributable to pretrial proceedings undertaken on defendant's behalf and to protect his rights. Time consumed in pursuing legal remedies is not to be considered improper delay. *People v Chism, supra.* Some of the delay is unexplained. It is the duty of the trial court to maintain a docketing system which sets forth the reasons for continuances. Without record indications of why the case did not proceed with greater expedition, our ability to assess speedy-trial claims is undermined. We are unable to weigh the circumstances of delay for which there is no record explanation where the defendant is on bond.

The fact that defendant did not complain of the delay before appeal is not determinative. *People v Grimmett, supra* at 607. It is an important consid-

---

[2] *People v Collins, supra.*

[3] *People v Grimmett, supra.*

[4] *People v Chism, supra.*

[5] *Barker v Wingo, supra.*

eration in following the balancing test set forth in *Barker v Wingo, supra.* In the instant case, the absence of an objection in the trial court may be viewed as indicative that defendant did not feel prejudiced by the delay and suggests the possibility that some of the unexplained delay was to accommodate defendant or his counsel.

Finally, defendant contends that the trial judge erred in granting the prosecutor's motion to strike the names of Mr. and Mrs. Norman Guilless from the list of endorsed witnesses. The position of the people is that: (1), the Guillesses were not res gestae witnesses; and (2), due diligence was exercised in attempting to locate and bring the witnesses to court.

A thorough hearing was conducted by the trial judge. There was confusion as to the existence of Mr. and Mrs. Norman Guilless let alone any indication as to what might be their testimony. One of the arresting officers, Richard Anderson, testified as follows:

"*Question:* To the best of your knowledge, does anyone by the name of Norman or Mr. and Mrs. Norman Guilless exist?

"*Answer:* I believe there was an error in—in, I assume it was Mr. and Mrs. Norman Kursey who is the female in the back of the room in the red that the officers were talking to, I am almost positive it was the same woman."

The officer in charge of the case at the time of the arrest testified as follows:

"*The Court:* All right, and does the information, except for the name of Mr. and Mrs. Guilless, include every person that you found at that time that had any res gestae information about the case who was present

in the position and did observe anything as far as you know?

"*Sergeant Mattioli:* Everybody is listed on the report and on the information that are pertinent, other than the Guillesses who I'm not familiar with.

"*The Court:* So you don't know of any Guillesses that had any connection with this case?

"*Sergeant Mattioli:* None, whatsoever."

Testimony was had regarding the diligence of the police officers in attempting to locate the Guillesses in preparation for trial. The post office was checked. City directories and public records were examined, utilities canvassed, apartment residents interviewed. There was no lead as to these potential witnesses. The endorsed witnesses were Mr. and Mrs. Norman Guilless. The resident apartment managers for the five years preceding trial were Mr. and Mrs. Norman Kursey. They lived in apartment no. 5 and the appellant was apprehended next door in apartment no. 6. Officer Anderson recalled: "After the arrest was made a car drove in occupied by a black female and a black male and they went into the apartment no. 5 which was next door." One of the officers talked to these late arrivals and it was Officer Anderson's opinion that there was an error, that Mr. and Mrs. Norman Kursey were in fact the Mr. and Mrs. Norman Guilless who were named on the information.

Mrs. Kursey testified during the hearing that she was the resident manager and she lived in the apartment next door to where defendant was apprehended. She said she could have talked to the police officers but didn't think so and that her husband could have talked to them but "after I guess it had all happened, but I don't know, tell—well, what he was saying to them or what". It

later developed that Mrs. Kursey had grown up with the defendant, knew his family and considered herself a friend. After the court ruled the Guillesses' names stricken from the information, defense counsel asked that the name of Mrs. Kursey be added to the information; the court granted the motion and required the prosecutor to endorse Mrs. Kursey as a res gestae witness. We believe that the court was correct in striking the names of Mr. and Mrs. Norman Guilless from the information. We believe that the court reasonably concluded that somehow the name Guilless became confused with the name Kursey and that the testimony was clear that Mr. and Mrs. Kursey arrived on the scene after all activity pertinent to the arrest had been concluded. We do not believe that Mr. and Mrs. Norman Kursey were necessary res gestae witnesses.

Sergeant Mattioli did recall meeting a 25-to 30-year-old white male dressed in blue jeans with whom he talked but whose name he did not record. This was after the arrest—outside near the police car. The officer did not know if anyone else had recorded the man's name. There is clear and convincing testimony by the people's witnesses that the appellant was alone in the suite where he was arrested.

Without knowing who the Guillesses are or what testimony they might give, we are unable to conclude that they were res gestae witnesses. Nor are we able to subscribe to the unduly restrictive definition of that term proposed by appellee. *People v Harrison,* 44 Mich App 578, 591; 205 NW2d 900, 908 (1973), contains a thorough discussion of the phrase "res gestae witness" and illustrates its outermost limits. The defense counsel argued that it was conceivable the missing or misnamed wit-

nesses could come to court and testify that immediately before the arrival of the police disreputable characters had left the premises. The implication was that perhaps some other person could have been the owner or possessor of the heroin. We do not see any reasonable basis for arriving at that conclusion.

The trial court was not convinced that Mr. and Mrs. Norman Guilless existed. In granting the motion to strike the court observed:

"I am not convinced that the name Guilless was the correct name of the person, if it was, the police and the prosecutor have used diligence to locate them, whether they have to do a door-to-door search in the neighborhood or not raises a fact question, but I don't feel they really have to. It seems to me they have used due diligence * * * ."

We cannot conclude that the court erred. Neither do we see from this record where there is any indication that either Mr. and Mrs. Norman Guilless or Mr. and Mrs. Norman Kursey were eyewitnesses to the corpus delicti of the crime. For a discussion of the concept see *People v Harrison,* 44 Mich App 578, 591; 205 NW2d 900, 908 (1973):

"No exact, precise definition of 'res gestae witness' can be formulated. Assuredly, the term embraces eyewitnesses to the corpus delicti of a crime. But where a person is present at the scene of an alleged crime, at the time of the alleged crime, has occasion to observe his surroundings, *People v Jessie Jackson,* 30 Mich App 438 [185 NW2d 897] (1971), and sees no crime, he too must be considered a res gestae witness, whom the people are obliged by law to call as a trial witness. This is but one example of one of the parameters that define a res gestae witness: a witness whose testimony is reasonably necessary to protect the defendant against a false accusation. *People v Thomas,* 34 Mich App 30 [190

NW2d 681] (1971). This rule applies where it is at all probable that any part of the transaction may be undisclosed, or where a fair presentation of the circumstances surrounding the alleged crime cannot otherwise be made to the court or jury. *People v Kayne,* 268 Mich 186 [255 NW 758] (1934); *People v Bartlett,* 312 Mich 648 [20 NW2d 758] (1945)."

The thrust of the defense was stated by counsel:

"The whole defense theory, your honor, is that Mr. Mumford didn't live there * * * ."

" * * * Your Honor, our primary defense is simply defense on the merits, Mr. Mumford never possessed this heroin, it was not his, he did not have intention to deliver."

In final argument defense counsel summed up:

"Now, look at these facts, let's look at possession. One, maybe there was heroin in a glass vial. That glass vial was not in Mr. Mumford's home, it was where he had come and dropped off a car so his friend could use to go shopping. That's the testimony. There was no testimony other than Mr. Mattioli's, Trooper Mattioli, that Mr. Mumford had been there before. Oh, okay, Trooper Mattioli said he was seen there once before. Rita Kersey said she saw Mr. Mumford for maybe three times a week, maybe twice in the past six months, maybe more, maybe less, maybe twice in the six months before May 18, maybe more than that, maybe less, she didn't know, but she said she had seen him because she knew him, but then Mr. Mumford said, well, maybe he was there twice, he made the case worse for himself, maybe."

We recognize that one may be a res gestae witness even if not on the scene at the time of the commission of the crime. See the examples listed in *People v Harrison, supra,* 44 Mich App at 592. We fail to see however, in view of the thrust of the

defense, where persons appearing on the scene after the arrest could reasonably be calculated to protect the defendant against false accusation. Furthermore the court may excuse production of even a res gestae witness at trial if the prosecution makes a showing of due diligence in attempting to produce the witness or when testimony of the witness would be merely cumulative. *People v Bennett,* 46 Mich App 598, 619; 208 NW2d 624 (1973), Gillespie, Michigan Criminal Law & Procedure (2d ed), § 605, p 782. Phyllis Patterson, the tenant of record in the apartment where the arrest took place, testified on behalf of the defendant. She said he was a casual visitor and came at her specific request so that she could use his car to go grocery shopping. The defendant testified in his own behalf. The issues were clearly framed and vigorously contested. The jury chose not to believe the defendant and his witness. We find no reversible error.

Affirmed.