PEOPLE v BOSCAGLIA

Docket No. 53595. Submitted October 19, 1981, at Detroit.—Decided
    October 5, 1982. Leave to appeal applied for.

Andrew Boscaglia was bound over on a charge of possession of a
    stolen motor vehicle with intent to pass title. The Recorder's
    Court of Detroit, Robert L. Evans, J., granted defendant's
    motion to quash the information on the basis that the vehicle
    for which defendant intended to pass title, having an owned
    frame, engine, transmission and running gear and a stolen
    body, was not a stolen motor vehicle within the contemplation
    of the statute. The people appeal. *Held:*

    A vehicle having a stolen body fitted to an owned chassis is
    not a stolen motor vehicle within the meaning of the possession
    of a stolen motor vehicle with intent to pass title statute, since
    the stolen portion of the vehicle is not capable of being self-
    propelled.

    Affirmed.

1. Statutes — Judicial Construction.
    The general rule for statutory construction in Michigan is that
    words in a statute must be interpreted according to their
    ordinary usage, in the sense in which they are understood
    when employed in common language, without exclusion of
    other words unless necessary to give intelligent meaning to
    prevent absurdity, and without regard to the court's own
    estimate of the wisdom of the statute.

2. Statutes — Judicial Construction — Legislative Intent.
    Courts, in determining legislative intent, must presume that the
    phrases and words used by the Legislature were used in their
    normally accepted meanings.

3. Words and Phrases — Motor Vehicle — Criminal Law.
    The term "motor vehicle" as used in the statute making it a
    crime to possess a stolen motor vehicle with intent to pass title

References for Points in Headnotes
[1, 2] 73 Am Jur 3d, Statutes § 206.
[3] 7A Am Jur 2d, Automobiles and Highway Traffic § 348.

limits the application of that statute to a self-moving vehicle which is designed to travel on common roads without rails and which carries in itself a mechanical motor as its source of power; accordingly, a vehicle which has an owned frame, engine, transmission and running gear and a stolen body is not a stolen motor vehicle within the meaning of that statute (MCL 257.254; MSA 9.1954).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Frank N. MacLean (R. Burke Fossee,* of counsel), for defendant.

Before: T. M. BURNS, P.J., and M. F. CAVANAGH and R. A. BENSON,* JJ.

R. A. BENSON, J. Following a preliminary examination on May 28, 1980, the defendant was bound over for trial on the charge of possession of a stolen motor vehicle with intent to pass title. MCL 257.254; MSA 9.1954. On August 4, 1980, the trial judge granted defendant's motion to quash the information. The prosecutor appeals as of right from that order.

The preliminary examination testimony reveals that on May 6, 1980, a police officer observed a 1980 two-tone blue Chevrolet truck with a "for sale" sign in the window parked in the driveway at the defendant's home. The police officer investigated the registration information on the license plates and discovered that the plates were registered to a 1979 Chevrolet truck with the vehicle identification number (VIN) CCU 149F340240. The police officer then contacted the manufacturer of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the truck and discovered that the 1979 truck was two-tone red at the time of manufacture. Finally the police officer did a title history on the 1979 vehicle and found that the truck had been purchased by the defendant in June of 1979 from an auto wrecker company.

On May 8, 1980, the police officer visited the defendant's home and indicated he was interested in purchasing the vehicle. The defendant produced a Michigan title to the truck and pointed out the VIN numbers attached to the dashboard and the federal safety inspection sticker located on the driver's door. The VIN numbers were those of the 1979 truck.

Subsequent investigation by the police officer revealed two additional VIN numbers. The VIN number on the frame of the truck corresponded to the 1979 vehicle. However, the VIN number on the body of the truck corresponded to a 1980 truck which had been stolen from Bernie Hout Chevrolet on December 12, 1979.

The preliminary examination testimony of the truck manager of Bernie Hout Chevrolet identified the truck at issue as the vehicle stolen from the dealership. The examining magistrate bound the defendant over for trial, but the trial court subsequently granted the defendant's motion to quash essentially holding that since the defendant owned the transmission, the motor, and the frame of the vehicle and that the only stolen portion was the cab the necessary elements for the charged crime were not present.

This exact issue has not been previously decided by an appellate court in this state.

The prosecutor argues for the acceptance of what may be called the "federal rule" as exemplified by the case of *United States v Neville,* 516 F2d

1302 (CA 8, 1975), in which the Court said that a similar federal statute (18 USC 2311, 2312) should be construed to include "major parts" in order to give complete effect to the congressional purpose of curbing interstate traffic in stolen motor vehicles.

On the other hand, the defendant answers that in the present case no stolen motor vehicle was possessed by the defendants since the frame, motor, transmission, steering gear, wheels, and tires all legally belong to the defendant, that these are the portions which comprise a "motor vehicle" and that the cab and the ornamentation portions do not comprise a motor vehicle.

The crux of the instant case concerns the scope of the term "stolen motor vehicle" as it applies to MCL 257.254; MSA 9.1954. The statute reads, in pertinent part:

"Any person * * * who, with intent to procure or pass title to a motor vehicle which he knows or has reason to believe has been stolen, shall receive or transfer possession of the same from one to another * * *."

The Legislature has defined the term "motor vehicle" in the following manner:

" 'Motor vehicle' means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from over-head trolley wires, but not operated upon rails." MCL 257.33; MSA 9.1833. See also MCL 750.412; MSA 28.644.

The essence of the term "motor vehicle" as it has been defined by the courts also involves the ability to be self-propelled. In *People v Matusik,* 63 Mich App 347; 234 NW2d 517 (1975), this Court was faced with determining whether an old van

parked behind a home and used as a storage shed was a building or a motor vehicle for purposes of the breaking and entering statute. The Court held that the van was a motor vehicle because only minor efforts would be needed to make the van operable and movable under power. Similarly, in *Travelers Indemnity Co v Duffin,* 28 Mich App 142, 147; 184 NW2d 229 (1970), *rev'd on other grounds* 384 Mich 812; 184 NW2d 739 (1971), this Court was faced with determining the definition of the term "automobile" for the purpose of interpreting an insurance policy. The Court stated:

"The term 'automobile' is applied generally to a self-moving vehicle designed to travel on common roads and, specifically, to a wheeled vehicle for use on roads without rails, which carries in itself a mechanical motor as its source of power.

"The body of a car stripped of its engine and wheels is not an 'automobile'. While it might closely resemble an automobile visually, there is no functional similarity because the stripped car does not have wheels and an engine and is, therefore, incapable of 'independent' movement." (Citations omitted.)

The Michigan cases which have specifically examined the offense of possession of a stolen motor vehicle with intent to pass title have not discussed the definition of the term "motor vehicle". *People v Cook,* 95 Mich App 645; 291 NW2d 152 (1980); *People v Harbour,* 76 Mich App 552; 257 NW2d 165 (1977), *lv den* 402 Mich 832 (1977); *People v Eroh,* 47 Mich App 669; 209 NW2d 832 (1973); *People v Morton,* 384 Mich 38; 179 NW2d 379 (1970). Similarly, the cases that have addressed the subject of stolen motor vehicles have focused on whether a vehicle was stolen rather than on the definition of the term. *People v Harris,* 82 Mich App 135; 266 NW2d 477 (1978); *People v*

*Goodchild,* 68 Mich App 226; 242 NW2d 465 (1976), *lv den* 397 Mich 830 (1976).

The vehicle involved in this case consists of a 1980 stolen truck cab attached to a 1979 legally owned frame, motor, and transmission. The prosecutor urges us to adopt the reasoning of the federal courts so that the definition of a "motor vehicle" will also include the major parts of a motor vehicle. In a case factually similar to this one, a federal appellate court in *United States v Neville, supra,* approved a trial court instruction in which the jury was told:

"[I]f you find as to any count that the motor vehicle described therein was stolen and that thereafter the major parts of said stolen motor vehicle were combined with the major parts of one or more other motor vehicles into one rebuilt motor vehicle which was thereafter transported in interstate commerce, then you may find that the rebuilt motor vehicle is the stolen motor vehicle". 516 F2d 1305, fn 3.

In upholding that instruction the 8th circuit said:

"Without 'major parts' of a vehicle being encompassed within the definition of 'motor vehicles', enforcement of the Act might be foreclosed simply whenever a thief swaps stolen parts before being caught. We believe Congress intended no such impediment to enforcement." (Citations omitted.) 516 F2d 1306.

However, in dealing with the Dyer Act the federal courts are faced with the interpretation of a single statute which must apply to the interstate transportation of stolen motor vehicles. The general rule for statutory construction in Michigan is that words in a statute must be interpreted accord-

ing to their ordinary usage, in the sense in which they are understood when employed in common language, without exclusion of other words unless necessary to give intelligible meaning to prevent absurdity, and without regard to the court's own estimate of the wisdom of the statute. *Michigan Employment Security Comm v General Motors Corp,* 32 Mich App 642; 189 NW2d 74 (1971). In determining legislative intent, courts must interpret words according to their ordinary usage and in the sense in which they are understood and employed in common language, so that when the Legislature uses certain phrases or words, the Court must presume they were used in their normally accepted meanings. *Chrysler Corp v Washington,* 52 Mich App 229; 217 NW2d 66 (1974). As recognized in previous cases in Michigan, the essential nature of a motor vehicle is a vehicle which is self-propelled on a roadway and not travelling on rails. Whereas the federal courts are dealing with a single act to prohibit the transfer of motor vehicles in interstate commerce, the Michigan Legislature has provided prosecutors with a more comprehensive scheme so that it is not necessary to use a strained construction of the words "motor vehicle" to prevent acts such as presented by the factual situation in this case. Michigan statutes make it a felony to receive and conceal stolen property which is valued in excess of $100. MCL 750.535; MSA 28.803. Under proper circumstances the sale of a motor vehicle with the representation that it is a 1980 motor vehicle with a good and valid title when it is, in fact, made up of parts of a 1979 motor vehicle and parts of a 1980 motor vehicle with an invalid title could constitute the crime of false pretenses. MCL 750.218; MSA 28.415.

It is, therefore, the opinion of this Court that

the word "motor vehicle" as used in this statute is limited to a self-moving vehicle which is designed to travel on common roads, without rails, and which carries in itself a mechanical motor as its source of power. The decision of the trial court in this matter was correct and is hereby affirmed.