PEOPLE v TERRY

Docket No. 60759. Submitted November 3, 1982, at Detroit.—Decided April 6, 1983.

    Lebaron R. Terry was charged with possession, with intent to deliver, of pentazocine and with possession of a firearm during the commission of a felony. He pled guilty to a reduced charge of possession of pentazocine, and the trial court granted his motion to quash the felony-firearm charge on the ground that the defendant did not have actual possession of the firearm at the time the underlying felony was committed, Recorder's Court of Detroit, George W. Crockett, III, J. Testimony indicated that defendant was observed removing some tablets from a concealed paper bag, concealing the bag again and crossing a street where he delivered the tablets to another person. The defendant then returned to the area where the bag was concealed. The bag was subsequently found to contain pentazocine tablets and a revolver. The prosecution appeals from the dismissal of the felony-firearm charge, alleging that a felony-firearm conviction may be sustained where a defendant has constructive possession of a firearm; that is, that the defendant knows where the weapon is and it is readily accessible to him when the underlying felony is committed. *Held:*

    A person "carries or has in his possession" a firearm during the commission of a felony, for purposes of the felony-firearm statute, when he has actual physical possession of the firearm or when the firearm is available and accessible to him during the commission of the felony. The trial court erred in quashing and dismissing the felony-firearm charge.

    Reversed and remanded.

    BRONSON, P.J., concurred and wrote separately to state his belief that the evidence showed actual, not constructive, possession of the firearm by defendant during the commission of the underlying felony because the possessory offense included the

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 293, 295.
[2] 73 Am Jur 2d, Statutes § 206.
[3] 79 Am Jur 2d, Weapons and Firearms § 15.

time when he removed the tablets from the bag which also contained the firearm.

1. CRIMINAL LAW — STATUTES.

Criminal statutes are to be strictly construed.

2. STATUTES — JUDICIAL CONSTRUCTION.

The general rule for statutory construction is that words in a statute must be interpreted according to their ordinary usage in the sense in which they are understood when employed in common language without exclusion of other words unless necessary to give intelligible meaning or to prevent absurdity and without regard to the court's own estimate of the wisdom of the statute.

3. CRIMINAL LAW — FELONY-FIREARM — POSSESSION OF FIREARM.

The terms "carry" and "possess" as used in the felony-firearm statute describe the actual physical possession of a firearm during the commission of a felony as well as a person's having a firearm available to him during the felony; the mere fact that a felon has a firearm at his disposal, should he need it, creates a sufficient risk to others that it is within the state's power to punish its possession (MCL 750.227b; MSA 28.424[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Vicky Buckfire,* for defendant.

Before: BRONSON, P.J., and V. J. BRENNAN and J. H. GILLIS, JJ.

PER CURIAM. Defendant was charged with possession with intent to deliver pentazocine, MCL 333.7401(2)(b); MSA 14.15(7401)(2)(b), and felony-firearm, MCL 750.227b; MSA 28.424(2). At the preliminary examination, a police officer testified that while he was investigating a complaint regarding narcotics transactions in the area of Lin-

wood and Virginia Park, he was sitting in his
parked car and observed the defendant run from
the east side of Linwood to the west side of Lin-
wood where he conversed with an unidentified
man. The defendant received an undetermined
amount of paper money from the man and placed
the money in his left jacket pocket. He then ran
back across the street to the east side of Linwood,
went over to a concrete parking lot bumper, re-
moved a piece of wood that was lying up against
it, retrieved a brown paper bag and then removed
a plastic bag which was inside the brown paper
bag. The defendant poured out some peach colored
tablets from the plastic bag into his hand, replaced
the bag, ran back across the street and handed the
tablets to the man who had previously given him
the money.

The defendant then returned to the concrete
bumper and sat down. The police officer and his
partner approached the defendant and identified
themselves as police officers. The defendant ran
away from the officers but returned to their loca-
tion when they instructed him to stop. The officers
retrieved the brown bag which the defendant had
concealed beside the concrete bumper. Inside the
brown bag the officers found a plastic bag, contain-
ing five peach colored tablets, and a .22 caliber
blue steel revolver. The tablets contained in the
plastic bag were later analyzed and found to be
pentazocine.

After the defendant was bound over on the
possession with intent to deliver charge and the
felony-firearm charge, he moved to quash the fel-
ony-firearm charge. The trial court granted the
motion on the ground that the defendant did not
have actual possession of the firearm at the time
that the underlying felony was committed.

The defendant subsequently pled guilty to a reduced charge of possession of pentazocine and was sentenced to a two-year term of probation and ordered to pay $200 in costs.

The people appeal and claim that the trial court erred by dismissing the felony-firearm charge. The people argue that actual physical possession of the weapon at the time the underlying felony is committed is not necessary as long as the defendant has "constructive" possession of the firearm; that is, the defendant knows where the weapon is located and the weapon is reasonably accessible to him. We agree.

We find that the felony-firearm statute prohibits the defendant from having a firearm on his person during the commission of a felony and also prohibits the defendant from having a firearm available and accessible to him during the felony so that it is obtainable by him if he should need it.

MCL 750.227b; MSA 28.424(2) states in part:

"A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony * * *."

It is well established that criminal statutes are to be strictly construed. *People v Saxton,* 118 Mich App 681, 690; 325 NW2d 795 (1982). The general rule for statutory construction in Michigan is that words in a statute must be interpreted according to their ordinary usage in the sense in which they are understood when employed in common language, without exclusion of other words unless necessary to give intelligible meaning to prevent absurdity and without regard to the court's own estimate of the wisdom of the statute. *People v Boscaglia,* 120 Mich App 15; 327 NW2d 383 (1982).

By using the phrase "carries or has in his possession" the Legislature was clearly prohibiting two separate courses of conduct. One who *carries* a firearm as well as one who *possesses* a firearm can be found guilty of violating the statute. The term "carry" ordinarily means to hold, transport or to take from one place to another. The ordinary meaning of the term "possess" is to exert influence or control over. As used in the felony-firearm statute, we find that the terms "carry" and "possess" were meant to describe the actual physical possession of a firearm during a felony as well as a person's having a firearm available and accessible to him during the felony. We find this construction of the statute to be consistent with this Court's previous decisions construing the terms "possession" and "carry" as they are used in other statutes.

In *People v Davis,* 101 Mich App 198, 201-203; 300 NW2d 497 (1980), the Court addressed the issue of whether an actor is "armed with a weapon" as the term is used in the statute defining first-degree criminal sexual conduct if, at the time of sexual penetration, the actor is not physically holding the weapon but the weapon lies some six feet away. The Court found:

"While there are no Michigan cases directly on point, tangential Michigan case law suggests that the answer is 'yes'. Thus, the term 'possession' has been held to include both actual and constructive possession. *People v Mumford,* 60 Mich App 279, 282-283; 230 NW2d 395 (1975). One has constructive possession if one has proximity to the article together with indicia of control. *Mumford, supra; People v Harper,* 365 Mich 494, 506-507; 113 NW2d 808 (1962). In *People v Little,* 58 Mich App 12; 226 NW2d 735 (1975), our Court held the prosecution need not prove physical possession of weapons in order to convict under a statute reading in

pertinent part: 'Any person who shall carry a * * * dangerous weapon * * * in any vehicle operated or occupied by him * * * shall be guilty of a felony * * *.' MCL 750.227; MSA 28.424. * * *

"Our decision that the actor need not have the weapon in his hands while committing the offense charged, so long as he has knowledge of the weapon's location and the weapon is reasonably accessible to the actor, is supported by two decisions from another jurisdiction. In *Mack v State,* 312 A2d 319 (Del, 1973), defendant's conviction of possession of a deadly firearm during commission of a felony (possession of narcotics with intent to sell) was sustained even though the loaded gun was found in a chest of drawers separate and apart from the dresser in which the narcotics were found.[2] in *Wilson v State,* 343 A2d 613 (Del, 1975), the Delaware Supreme Court sustained a conviction of possession of a deadly firearm during the commission of a felony even though the weapons were located some 25 feet from the place where the narcotics were found.

---

" '2 As used in this Statute, we think that the word "possession" has a more limited meaning; that it requires the elements of availability and accessibility. We hold that a felon is in "possession" of a deadly weapon, within the meaning of § 468A, only when it is physically available or accessible to him during the commission of the crime. General "dominion and control" of a weapon located elsewhere, and not reasonably accessible to the felon, obviously is not the test under § 468A.' 312 A2d 319, 322."

---

Also, in *People v Lumpkin,* 85 Mich App 722; 272 NW2d 585 (1978), where the defendant stated that he was sitting on a couch with a small pack of heroin on his person and a gun at his side when the police entered the house, the Court found that the defendant's testimony clearly established that he was in possession of a firearm when he committed the offense of possessing heroin. Thus, the defendant's guilty plea to a felony-firearm charge was affirmed even though the defendant did not have actual physical possession of the firearm at the time the felony was committed. We find that

an analogous situation exists in the present case. Here, the firearm was accessible and available to the defendant at the time he possessed the controlled substance. We find that this is sufficient to sustain a charge of felony-firearm.

Further, our holding in this case is consistent with the purpose of the felony-firearm statute, which was stated by the Court in *People v Elowe,* 85 Mich App 744, 748-749; 272 NW2d 596 (1978), where the Court, in reinstating a charge of felony-firearm, found that the felony-firearm statute imposed no requirement of a nexus between the felony and the firearm. The Court elaborated on the purpose of the felony-firearm statute:

"The purpose of the felony-firearm statute is to deter the use of handguns during the course of a felony and to assure the punishment of persons who possess handguns during the perpetration of a felony. The goal of deterrence is better achieved without adding the requirement of a 'nexus' between the firearm and the felony. By punishing the 'possession', as opposed to 'use', of a firearm during the commission of a felony, the Legislature was attempting to reduce the possibility of injury to victims, passersby and police officers. Had defendant's criminal enterprise gone awry, he may well have been tempted to use his firearm to effect an escape. *The mere fact that a felon has a firearm at his disposal, should he need it, creates a sufficient enough risk to others that it is within the state's power to punish its possession.* Moreover, the statute as written may act to deter the felony itself. Certainly some prospective felons may lack the courage to even attempt the crime without the added protection of a firearm. Thus, the statute's goal of deterrence, which is essentially directed toward the use of firearms during felonies, may extend to the felony itself, by virtue of the prohibition against the *possession* of a firearm during the course of a felony. This additional deterrence is both desirable and consistent with the goals of the

criminal law generally." (Footnote omitted.) (Emphasis added.)

We find the above emphasized statement applicable to the instant case and consistent with our holding that a person "carries or has in his possession" a firearm during a felony when the person has physical possession of the weapon or when the weapon is available and accessible to the person during the felony. Thus, we reinstate the charge of felony-firearm against the defendant. In addition, we reject the defendant's claim that double jeopardy bars the prosecutor from trying the defendant on that charge.

Reversed and remanded. We do not retain jurisdiction.

BRONSON, P.J. *(concurring)*. I fully agree with the majority's conclusion that defendant was properly bound over on the felony-firearm charge. I write separately to state my belief that the prosecution's proofs showed that defendant had *actual,* not *constructive,* possession of a firearm at the time he committed the offense of possession of pentazocine with intent to deliver. The possessory offense clearly included the time at which defendant picked up the paper bag containing his gun.