# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MATTHEW DAVID MILLER,

       Defendant-Appellant.

UNPUBLISHED
May 24, 2018

No.   335888
Wexford Circuit Court
LC No.   2016-011591-FH

Before:  METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant was convicted by a jury of possession of a firearm by a convicted felon, MCL 750.224f, possession of marijuana—second offense, MCL 333.7403(2)(d) and MCL 333.7413, and possession of ammunition by a convicted felon, MCL 750.224f(6).  He was sentenced to concurrent terms of 30 to 180 months for the felon in possession/firearm conviction as a fourth-offense habitual offender, MCL 769.12, 16 to 24 months for the marijuana conviction, and 23 to 60 months for felon in possession/ammunition conviction.  Defendant appeals as of right, and we affirm.

## I.  FACTS

Defendant was on probation for a previous felony conviction.  Defendant did not dispute that he was subject to searches as a condition of his probation.  As a condition of his probation, he could not possess firearms, ammunition, or controlled substances.

According to Lindsay Simmon of the Wexford County Parole and Probation Office and Detective Chad Sprik of the Traverse Narcotics Team, defendant allowed a team to enter his home and conduct a compliance search on January 5, 2016.  The search was apparently prompted by a complaint from the Department of Health and Human Services (DHHS), which advised that defendant's daughter had made some statements indicating that weapons and marijuana were located in defendant's home.  In defendant's bedroom, under his bed, Simmon discovered a .30 caliber rifle in a gun case.  There was also a gun safe in the bedroom.  Simmon testified that, at the time of the search, defendant acknowledged that the safe was his but that he had lost his key.  Simmon further stated that defendant claimed that his former fiancée had a key to the safe.  According to Simmon and Sprik, defendant gave permission for them to break into the safe.  Inside there were two jars, one containing what proved to be balls of marijuana and the

other containing an oily substance that proved to be tetrahydrocannabinol, an active ingredient of marijuana. There were also three shotgun shells (two 410-gauge shells and one 12-gauge shell) as well as defendant's passport, some bottles of prescription medications with defendant's name on them, and $140 in cash. Simmon testified that defendant expressly admitted to owning the safe and the marijuana inside one of the glass jars.[1]

Defendant testified that he did not know about the presence of the rifle under his bed. He admitted that he owned the rifle but claimed it had been stored at his former fiancée's parent's home and that it was used by his children for hunting. He also claimed that his former fiancée was a medical marijuana user and that he had given her the gun safe to store her marijuana. He testified that she had the only key to the gun safe but that she had lost it. Although defendant did not present his former fiancée as a witness, he did present the testimony of his friend, Jesse Thwaite, who testified that he had returned the rifle to defendant's home when no one was home and had failed to inform defendant of this fact until after the probation search had occurred.

The prosecution presented two rebuttal witnesses: defendant's sister, Rebecca Nye, and her husband, Douglas Nye. Rebecca testified that she overheard defendant give permission to the police to break into the gun safe. Douglas testified that in late 2015, defendant had brought the rifle to him to have some gunsmithing work done on it. Douglas also testified that shortly after the search, defendant brought him a rifle magazine and .30 caliber ammunition, telling him that since the police had taken the rifle he had no need for the magazine or the ammunition. Finally, Douglas testified that defendant had told him that during a previous search, the police had failed to discover the rifle because it was hidden beneath a couch on the front porch.

## II. ANALYSIS

## A. PRIOR CONVICTIONS

Defendant first argues that the admission of defendant's prior convictions and the stipulation to the fact of the convictions, allowing the details to be presented to the jury, violated his right to a fair trial. Specifically, defendant argues that the evidence of the nature of the prior convictions was improper propensity evidence that creates a prejudicial effect that outweighs the evidence's relevancy. In essence, defendant is arguing that the admission of the evidence runs afoul of MRE 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, because no objection was raised in the trial court, the issue is not preserved, and we review for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

---

[1] While not an explicit admission, Simmon also stated that defendant agreed that given defendant's ownership of the safe, it would make sense that the oily substance was his as well.

Here, without objection from defendant, four certified copies of judgments of conviction were admitted into evidence, which showed that defendant had four prior convictions for the illegal sale of medical marijuana. On appeal, defendant argues that because the nature of these convictions involved marijuana, which is one of the offenses charged here, the jury was negatively influenced to render its guilty verdict in the present case. However, defendant cannot show how the nature of the convictions affected the outcome of these proceedings. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003) (stating that to prevail under plain-error review, the error must be "outcome determinative"), citing *Carines*, 460 Mich at 763. Here, there was no testimony or argument concerning the number of prior charges or convictions. The only evidence of the prior charges was the exhibit certifying the prior convictions, which was not described for the jury when admitted, other than as "four certificates of conviction." But while the certified copies of the convictions were admitted into evidence, there is nothing in the record to show that the jury actually viewed them. When the court gave its final instructions to the jury, it stated, "If you want to look at any or all of the . . . exhibits that have been admitted, please ask for them." The jury deliberated for less than an hour before returning a guilty verdict, and there is no indication that it requested any of the exhibits. Accordingly, even assuming that the admittance of the certificates of conviction was plainly erroneous, defendant has failed to prove how any such error was outcome determinative, and his claim thus fails.

Defendant also argues that his trial counsel was ineffective by not objecting to the admission of the evidence. Defendant claims that counsel should have stipulated only to the fact of a prior felony conviction and should have sought a ruling that the nature of the prior felony be withheld from the jury.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was below an objective standard of reasonableness under prevailing professional norms and that a reasonable probability exists that, without counsel's unprofessional errors, the outcome of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). However, even assuming trial counsel's performance fell below an objective level of reasonableness, defendant is not entitled to any relief because he cannot show how counsel's performance caused any prejudice. See *Strickland*, 466 US at 697 ("[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."). As already noted, there is nothing in the record to indicate that the jury actually saw the exhibit reciting the prior convictions. Therefore, defendant cannot show that any purported error in the admission of the certificates of conviction affected the jury's deliberation, and his claim of ineffective assistance of counsel necessarily fails.

## B. REBUTTAL TESTIMONY

Defendant next claims that the trial court improperly permitted the prosecutor to present in his rebuttal case testimony that should have been presented in the case-in-chief. We note that

defendant did not object to any of the challenged evidence on these grounds.[2]  Accordingly, our review of this unpreserved issue is for plain error affecting substantial rights.  *People v Putman*, 309 Mich App 240, 245-246; 870 NW2d 593 (2015).  Defendant's argument centers on one claim: that the prosecution knew of the rebuttal witnesses before trial, knew what their testimony would be, and therefore should have offered the testimony in its case-in-chief.

"Rebuttal evidence is admissible to 'contradict, repel, explain or disprove evidence produced by the other party and tending to directly weaken or impeach the same.' "  *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996), quoting *People v DeLano*, 318 Mich 557, 570; 28 NW2d 909 (1947).  The question of whether rebuttal is proper depends on what proofs the defendant introduced and not merely what the defendant testified about on cross-examination:

> [T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant.  As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief.  [*Figgures*, 451 Mich at 399 (citations omitted).]

On direct examination, defendant acknowledged being "familiar" with the rifle.  He claimed it was used by his children for hunting, and he further testified that he had not seen the rifle since before he had been placed on probation.  On cross-examination by the prosecutor (and on re-direct examination), defendant admitted that he owned the rifle on January 5, 2016, the date of the search.  However, he claimed that he "devoted" it to his children and reiterated that he had not seen the rifle since before being placed on probation, insisting that it was kept at his fiancée's parent's home.  The prosecutor specifically asked defendant if he had previously taken the rifle to his brother-in-law to have gunsmithing work done on it and defendant denied that he had.  Because of defendant's denial, the prosecutor presented Douglas's testimony that defendant had brought the rifle to him around deer hunting season in 2015 and asked him to work on the gun.  This testimony directly contradicted defendant's testimony and therefore was proper rebuttal evidence.

Defendant also takes issue with two other aspects of Douglas's testimony, which defendant claims should have been presented during the prosecutor's case-in-chief.  The prosecutor asked defendant (1) if he had ever given any ammunition to Douglas and (2) if he had once told either Douglas or Rebecca that the police failed to find the rifle during a previous search because it was hidden underneath a couch on the front porch of his house.  Defendant denied doing either of these things.  Based on defendant's denial, the prosecutor presented

---

[2] While defendant objected to one instance of Douglas's testimony on relevancy grounds, an objection on one ground is insufficient to preserve appellate review on another ground.  *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004).

Douglas's testimony (1) that a couple of weeks after the police raid on January 5, 2016, defendant brought a rifle magazine and a "pocketful" of .30 caliber ammunition to him and explained that Douglas could have them because, as the police had taken the rifle, he no longer had any need for the magazine or the ammunition, and (2) that defendant told him that he had previously hidden the rifle on the front porch under a couch and the police had missed it during their previous search of his home. This testimony directly contradicted defendant's denials and was therefore proper rebuttal testimony.

Likewise, Rebecca's testimony was properly admitted as rebuttal evidence. During the prosecution's case-in-chief, Simmon and Sprik testified that defendant gave permission for the police to break into the safe because defendant did not have the key. Defendant, however, later testified that he did not give the police permission and that he "told them that it wasn't my safe to give them access to and that I did not have a key for it." Based on defendant's testimony, the prosecutor presented the rebuttal testimony of Rebecca, who testified that she heard the conversation between Simmon and defendant and that defendant gave the police permission to break into the safe. This testimony directly contradicted the testimony defendant had offered and therefore also was proper rebuttal testimony.

Defendant again asserts that his trial counsel was ineffective for failing to object to the rebuttal testimony. Defendant does little beyond citing the standards for reviewing ineffective assistance of counsel claims; he offers almost nothing in the way of analysis or argument. Regardless, because the testimony was properly presented as rebuttal evidence, any objection would have been futile, and defense counsel is not ineffective for failing to raise a meritless or futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## C. STANDARD 4 BRIEF

### 1. INEFFECTIVE ASSISTANCE

In his Standard 4 brief, defendant raises additional ineffective assistance of counsel claims. He first claims that his counsel was ineffective for failing to object to the police search of his home, which defendant suggests was unconstitutional. He further claims that counsel should have utilized a surveillance video to demonstrate the unconstitutionality of the search. Defendant has not established that such a video even exists or what it depicts (beyond the unsupported claim that it would show the search was illegal). Defendant does not present any argument or analysis to explain why the search was unconstitutional. In short, defendant has failed to adequately present this issue for review. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Furthermore, the record shows that one of the terms of defendant's probation authorized the police to search defendant's property or premises to ensure compliance with his terms of probation.[3] As such, defendant has failed to show how the search was

---

[3] From the judgments of sentence defendant has attached to his supplemental brief, it appears defendant was given concurrent two-year probationary sentences with 60 days to be served in jail for his prior felony drug convictions. Also, at sentencing, the trial court observed that defendant

impermissible, and thus counsel was not ineffective for failing to raise a meritless argument. See *Ericksen*, 288 Mich App at 201.

Defendant next claims his trial counsel was ineffective for failing to move for a directed verdict based on the prosecution's failure to establish the elements of constructive possession of the rifle. Once again, defendant does not offer any supporting citation of law or any legal analysis and does not explain how the prosecution's proofs were deficient. Thus, he has abandoned this issue. *Kelly*, 231 Mich App at 640-641.

Next, defendant asserts that his trial counsel was ineffective because he failed to argue that defendant's medical condition authorized him to use and possess marijuana. Defendant has provided no evidence to support this factual assertion. In other words, defendant has failed to establish the factual predicate for his claim of ineffective assistance of counsel. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Nothing in the record demonstrates that defendant was authorized to use medical marijuana. Indeed, defendant's own testimony shows how such a defense would have been inconsistent with his testimony, in which he described that the marijuana in the safe was his fiancée's for *her* medical marijuana. Accordingly, defendant cannot prevail on this claim.

Defendant next claims his trial counsel was ineffective for failing to move to have the trial court revoke his bond so that he could get credit for the time he was serving in jail before trial. At the conclusion of the trial, after defendant was convicted, the following discussion occurred:

> *The Court*: Mr. Wiggins, I'm sorry, I don't recall how much longer Mr. Miller has to go on the sentence I imposed for his probation violation.

> *Mr. Wiggins [Defense counsel]*: Your Honor, I believe it's early to mid August.

> *The Court*: Did I revoke his bond on the criminal case?

> *Mr. Wiggins*: I don't believe you had.

---

had been on probation. Simmon testified, "And I indicated—reminded him he was on felony supervision; and if he remembered as part of his probation conditions, that we were authorized to search property or premises in case of concern with probation violations which we had found." Neither party has filed a copy of the order listing defendant's probation conditions. Simmon offered to read the probation conditions during her cross-examination testimony at trial, but defense counsel declined her offer. Simmon's testimony, however, indicates that one of the conditions was the right of the probation agents to search defendant's person or property, and based on a prior compliance check, it is clear that defendant was aware of why the probation/police team was there and what it was doing.

-6-

*The Court*: All right.  Are you requesting that I do that now or do you want me to leave his bond in place?

*Mr. Wiggins*: We would request that the bond be kept in place.

*The Court*: Kept in place.  Mr. Trautner, any comment on that?

*Mr. Trautner [Prosecutor]*: No.

*The Court*: All right.  I will continue the bond on Mr. Miller.  You understand, Mr. Miller, if you complete your sentence, you're required to comply with probation and report to [the] court for sentencing.

*The defendant*: Yes.

*The Court*: Do you understand that?  It's going to be in your best interest to cooperate with doing an updated sentence report.  Do you understand?

*The defendant*: Yes, I do.

Before sentencing occurred, defendant's trial counsel filed a motion to withdraw.  At the hearing on that motion, the following colloquy occurred:

*The Court*:  . . . Mr. Miller, I brought you back in because it was pointed out to me by my staff that you're going to be completing your probationary sentence on the 28th of this month.

It's the Court's intention to revoke your bond on the new case.  At the time of your conviction, I requested that your bond be revoked or that it be maintained in place, and Mr. Wiggins, on your behalf, requested that your bond remain in place.  The Court's intention now is to revoke your bond.  Is there anything you want to say about that?

*The defendant*: Yeah.

*The Court*: What do you want to say?

*The defendant*: Just a second, please.  I would like to ask actually what the reason for revoking my bond would be?

*The Court*: The reason is, Mr. Miller, that you've been convicted of a crime, and you're not entitled to bond.  The law is clear that you're not entitled to bond once you've been convicted.  You were convicted by a jury trial[;] that means that you are not entitled to bond.  It's not my intention to allow you to be released before your sentence.  That will be all for the record.  You can go back with the officer.  Thank you.

*The defendant*: Your Honor, I've been convicted of crimes before, and my bond has not been revoked before.

*The Court*: That's true; but in this case, your bond is being revoked and that's within the law. Thank you.

Thus, the record shows that the question of whether to revoke defendant's bond was considered, defendant was consulted—both through his counsel and directly—and defendant evidently did not want his bond revoked. Because defendant's own statements make it apparent that he did not want the court to revoke his bond, he has waived consideration of this claim on appeal. See *Czymbor's Timber, Inc v Saginaw*, 269 Mich App 551, 556; 711 NW2d 442 (2006) ("A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court.").

Finally, defendant claims that his trial counsel was ineffective for failing to object to what defendant contends was a disproportionate sentence. According to defendant, the sentencing guidelines range for the felon in possession of a firearm conviction was 7 to 48 months. Defendant's minimum sentence for this offense was 30 months, which was near the middle of the sentencing guidelines range. Because the minimum sentence was within the guidelines range, and there was no error in scoring the guidelines or inaccurate information relied on in determining the defendant's sentence, this court must affirm the sentence. See MCL 769.34(10); *People v Schrauben*, 314 Mich. App. 181, 196 n 1; 886 N.W.2d 173 (2016). Defendant's claim on appeal that he was sentenced to "the statutory maximum" is not supported by the record. Therefore, there was no basis for this objection and no ineffective assistance of counsel. See *Ericksen*, 288 Mich App at 201.

## 2. REMAINING CLAIMS

Defendant raises as independent claims each of the claims he has addressed as an example of his trial counsel's alleged ineffectiveness. Defendant did not raise these claims in the trial court and so they are not preserved for appeal. Unpreserved issues are reviewed for plain error. *Carines*, 460 Mich at 752-753, 764.

Defendant first claims that the probation/police search of his home violated the Fourth Amendment, US Const, Am IV. He alleges that a surveillance video would substantiate his claim by showing that no one permitted the probation agent or police to enter his home. But nothing in the record shows what this video purportedly would reveal. In any event, Simmon testified that she requested entry into the home and that defendant granted the request. Defendant did not contest this claim in his own testimony. Moreover, as already discussed, defendant was on probation, the terms of which allowed the police to search his home without a warrant and without notice.

Defendant argues that the Administrative Code requires that agents have probable cause before conducting a search. However, defendant cites Mich Admin Code R 791.7735, which applies to parolees, not probationers. Based on Simmon's testimony, one of the terms of defendant's probation order was that he consent to searches of his person and property.

Defendant did not dispute this in the trial court, and he has offered nothing on appeal to contradict Simmon's testimony in this regard. Rule 791.9920(1),[4] which applies to probationers, required only that the probation department place the terms and conditions of the probation in the order of probation and inform the probationer of the terms and the consequences for failing to abide by the terms. Moreover, even if probable cause were required, it apparently existed as defendant's daughter had apparently informed someone at DHHS that guns and marijuana were being kept in defendant's home.

Defendant next contends that the prosecutor failed to present sufficient evidence that he possessed the rifle. "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "[T]he question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). The evidence of possession, considered in a light most favorable to the prosecution, was sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt.

Defendant was a convicted felon who was on probation. MCL 750.224f(2) precludes convicted felons from possessing firearms. Pursuant to this provision, a convicted felon "cannot directly possess . . . firearms" and cannot "constructively possess the firearms." *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). Regarding constructive possession, our Supreme Court has stated in *People v Hill*, 433 Mich 464, 469-470; 446 NW2d 140 (1989):

> As with the federal rule, a person has constructive possession if there is proximity to the article together with indicia of control. *People v Davis*, 101 Mich App 198; 300 NW2d 497 (1980). Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. Physical possession is not necessary as long as the defendant has constructive possession. *People v Terry*, 124 Mich App 656; 335 NW2d 116 (1983).

The prosecution established that the rifle was underneath the bed in defendant's bedroom. Defendant admitted that he owned the rifle but claimed that the rifle had been returned to his home without his knowledge and that he was unaware of its presence under his bed. The prosecutor impeached defendant's claims with Douglas's testimony concerning defendant's prior possession of the weapon. It was therefore a matter of credibility for the jury, not this Court, to make such determinations. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Thus, there was sufficient evidence to support a jury finding that defendant constructively possessed the rifle in his bedroom. The evidence of defendant's possession of the marijuana and

---

[4] Mich Admin Code, R 791.9920(1): "When an offender is placed on probation, the supervising probation agent shall provide the offender with a copy of the order and inform the offender of the statutory conditions, as well as all of the terms and conditions contained in the order, and the possible consequences of a failure to adhere to the conditions of probation."

ammunition was similar to his possession of the rifle. Defendant admitted that he originally purchased the gun safe in which these items were found and he also admitted that the safe, the passport, and the marijuana were his. There were identifiable personal items in the gun safe that clearly belonged to defendant: his passport and his prescription medications. Further, Simmon testified that defendant admitted to owning the marijuana in one of the jars contained in the safe. The jury certainly was not required to believe defendant's trial testimony that he did not have a key to the safe or that the marijuana was his ex-fiancée's. See *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012). Thus, the evidence sufficiently established that defendant controlled the gun safe and its contents.

Defendant next claims that he was immune from prosecution for possession of marijuana because, although his medical marijuana registration had expired, he nonetheless qualified under the affirmative defense provision of § 8 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421, *et seq*.

> The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use "is carried out in accordance with the provisions of [the MMMA]." [*People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012) (citations omitted; emphasis in original).]

When the electors approved the MMMA, they provided that the 'medical use of marihuana is allowed' only to the extent that the medical use was 'carried out in accordance' with the act." *People v Carlton*, 313 Mich App 339, 346; 880 NW2d 803 (2015). "Section 8(a) of the MMMA provides any patient or primary caregiver—regardless of registration with the state—with the ability to assert an affirmative defense to a marijuana-related offense." *People v Hartwick*, 498 Mich 192, 226; 870 NW2d 37 (2015). "Section 8(a)(1) requires a physician to determine the patient's suitability for the medical use of marijuana," *id.* at 228, and requires the following:

> A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a)(1).]

Accordingly, the defense can be reduced to these three elements:

(1) The existence of a bona fide physician-patient relationship,

(2) in which the physician completes a full assessment of the patient's medical history and current medical condition, and

(3) from which results the physician's professional opinion that the patient has a debilitating medical condition and will likely benefit from the medical use of marijuana to treat the debilitating medical condition. [*Hartwick*, 498 Mich at 229.]

A defendant asserting this defense has to present prima facie evidence of each of these elements in order to be able to present a § 8 affirmative defense. *Id.* at 203. If a defendant does establish a prima facie defense under § 8, then the defendant also has to prove the existence of these elements by a preponderance of the evidence to the fact-finder. *Id.* Here, defendant points to no evidence to show how these elements were or could have been satisfied. Instead, he implies that the fact that he had an expired registration is sufficient. However, the *Hartwick* Court explicitly held that possessing a *valid* registration is inadequate to create a presumption of meeting all of these elements. *Id.* If a valid registration card is inadequate, then it goes without saying that an expired one is inadequate as well. Therefore, defendant has failed to show that he is entitled to any relief on the basis of the MMMA.

Finally, defendant claims that his sentence was disproportionate. However, his minimum sentencing guidelines range for the felon in possession of a firearm conviction was 7 to 48 months, and he was sentenced to a minimum sentence of 30 months. A sentence within the guidelines range is presumptively proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Moreover, there is no merit to defendant's claim that this sentence was disproportionate because the trial court sentenced him as a fourth-offense habitual offender rather than a second-offense habitual offender. Defendant's claim that the trial court could not utilize prior convictions that arose from one transaction to sentence him as a fourth-offense habitual offender is mistaken. Under Michigan's habitual offender statutes, MCL 769.10, MCL 769.11, MCL 769.12, and MCL 769.13, "The unambiguous statutory language directs courts to count each separate felony conviction that preceded the sentencing offense, not the number of criminal incidents resulting from felony convictions." *People v Gardner*, 482 Mich 41, 44, 68; 753 NW2d 78 (2008). Thus, defendant's argument is without merit, and he has failed to rebut the presumption that his minimum sentence, which was within the guidelines range, was proportionate.

Affirmed.

/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel